**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Manuel COSTA, Debra Maxine
Perry, Rene Totorica Nunez,
Defendants–Appellants.**

**No. 89–5874.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 25, 1991.

Arthur Joel Levine, Adler & Cops, Philadelphia, Pa., for Perry.

Peter Raben, Coconut Grove, Fla., for Costa.

Sheryl J. Lowenthal, Coral Gables, Fla., for Nunez.

Paul Morris, Coral Gables, Fla., for Blucher.

Karen L. Atkinson, Kathleen Salyer, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY, Circuit Judge, JOHNSON *, Senior Circuit Judge and MERHIGE **, Senior District Judge.

JOHNSON, Senior Circuit Judge:

This case arises on appeal following the appellants' convictions on drug trafficking charges. Because the appellants have failed to establish any errors below justifying reversal, we affirm the appellants' convictions.

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

## I.  STATEMENT OF THE CASE

### A.  *Background Facts*

Between January and July 1985, a group of south Florida smugglers, allegedly including appellants Costa, Nunez, and Perry, imported cocaine from the Bahamas into Florida.  The smugglers made at least four trips over the course of six months, bringing over 1,800 kilograms of cocaine into the United States.

The group picked up cocaine flown to the Bahamas from Colombia, loaded the cocaine aboard boats in the Bahamas, and sailed to south Florida with their cargo, where the cocaine was unloaded and delivered to distributors.  United States Customs agents discovered the June load.

### B.  *Procedural History*

On March 3, 1987, a federal grand jury indicted fourteen individuals on various charges including conspiracy to import cocaine, importation of cocaine, conspiracy to possess cocaine with intent to distribute, and possession of cocaine with intent to distribute.  On May 12, 1987, the grand jury issued a superseding indictment naming one additional defendant.  On August 30, 1987, the grand jury issued a second superseding indictment naming four more individuals.  Appellants Costa, Nunez, and Perry were first named in the second superseding indictment.  Costa, Nunez, and Perry were all charged in count I with conspiring to import cocaine between November 1984 and July 1985, in violation of 21 U.S.C.A. § 963 (1981), and in count II with conspiracy to possess cocaine with intent to distribute between November 1984 and July 1985, in violation of 21 U.S.C.A. § 846 (1981).  Costa and Nunez were charged in counts IV, V, VII, and IX with the importation of cocaine related to drug importations in January and February of 1985, in violation of 21 U.S.C.A. § 952(a) (1981) and 18 U.S.C.A. § 2 (1969).  Nunez was also charged in counts III and X with possession of cocaine with intent to distrib-

---

** Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

ute in violation of 21 U.S.C.A. § 841(a) (1981) and 18 U.S.C.A. § 2. Finally, Perry was charged in counts VIII and XV with possession of cocaine with intent to distribute in violation of 21 U.S.C.A. § 846.

All but six of the nineteen persons indicted pled guilty to the charges. However, appellants Costa, Nunez, and Perry were among those who pled not guilty and proceeded to trial. After a six week trial, a jury found Costa and Nunez guilty on all counts. Perry was found guilty on counts II, VIII, and XV and not guilty on count I.

The district court sentenced all three defendants to terms well within the statutory limits for the relevant crimes.[1] Finally, the lower court, pursuant to 18 U.S.C.A. § 4205(b)(1) (1976), ordered that Costa would not be eligible for parole until he served one-third of his sentence. Defendants Costa, Nunez, and Perry now bring a direct appeal of their criminal convictions before this Court.

## II. ISSUES PRESENTED

Appellants raise nine issues on appeal. Three of these issues merit close examination and discussion by this Court. First, Costa, Nunez, and Perry all allege that the district court abused its discretion by limiting the testimony of defense witness Roger Furbee. Second, Costa and Nunez claim that the district court abused its discretion by admitting extrinsic evidence of unindicted offenses related to drug smuggling. Finally, Costa and Nunez challenge their conviction on three counts of importing cocaine in the January 1985 importation, claiming that convictions on all three counts constituted impermissible multiplicity. The remaining six issues raised by the appellants do not warrant extended discussion and will be addressed summarily.

## III. ANALYSIS

### A. *Partial Exclusion of Roger Furbee's Proffered Testimony*

All three appellants claim that the district court erred when it limited defense witness Roger Furbee's testimony. Furbee

would have testified that, although he imported cocaine in February, March, and June of 1985 with three of the government's witnesses (Ellsworth, Hanlon, and Roloff), he had never seen or heard of appellants in connection with his smuggling. Furbee's testimony would have tended to show that the defendants were not, in point of fact, engaged in the smuggling operation. Because the only evidence linking the defendants to the importation phase of the operation was the testimony of government witnesses, the exclusion of significant portions of Furbee's testimony cannot be lightly dismissed.

The district court, after hearing Furbee's testimony outside the presence of a jury, held that Furbee could testify about the June 1985 shipment, but prohibited him from testifying about the two other shipments in which he participated and his "standby status" for the January load. We review the district court's decision to exclude a significant portion of Furbee's proffered testimony under the abuse of discretion standard of review. *Richardson v. McClung,* 559 F.2d 395, 396 (5th Cir. 1977). *See also United States v. Beechum,* 582 F.2d 898, 915 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

The district court reached its decision to bar Furbee's exculpatory testimony under two separate analyses. The court found, sua sponte, that Furbee's involvement with Ellsworth related to a different conspiracy than the one alleged at trial. The court based this finding of unrelated conspiracies on Furbee's inability to recall certain details regarding the boats used to import the cocaine and on differences in Furbee's recollection of the operations from the descriptions provided by the other conspirators. The district court held that admission of Furbee's testimony regarding importations other than the June importation would tend to confuse the jury because the testimony related to a second conspiracy, and therefore that its admission would violate Feder-

---

1. Sentencing in this case predated the federal    sentencing guidelines.

al Rule of Evidence 403.[2] The court also analyzed Furbee's proffered testimony under Rule 608(b).[3] The district court reasoned that the defense was attempting to impeach the general credibility of Ellsworth, Hanlon, and Roloff with extrinsic evidence of specific instances of misconduct unrelated to the conspiracy at issue. Rule 608(b) "prohibits the use of extrinsic evidence merely to impeach the general credibility of a witness." *United States v. Calle,* 822 F.2d 1016, 1021 (11th Cir.1987). Thus, the trial court's characterization of Furbee's proffered testimony barred its introduction: Because the court found that Furbee was involved in a separate conspiracy, it analyzed his testimony under Rule 608(b) rather than Rules 401 and 402, and applied Rule 403 to exclude Furbee's testimony regarding the February and March shipments.

Although we are concerned by the lower court's Rule 403 ruling, we are not prepared to hold that it constituted an abuse of discretion by the trial court. The abuse of discretion standard imposes a heavy burden on the party seeking to reverse a district court's evidentiary ruling. *See Balogh's of Coral Gables, Inc. v. Getz,* 798 F.2d 1356, 1358 (11th Cir.1986) (en banc). This is so for a good reason—the trial court is in the best position to evaluate the credibility of witnesses and the relevance and probity of an evidentiary offering. *See United States v. Yellow Cab Co.,* 338 U.S. 338, 341–42, 70 S.Ct. 177, 179–80, 94 L.Ed. 150 (1949). This Court may reverse a district court's evidentiary ruling only if it maintains a "definite and firm conviction that the [trial] court made a clear error of judgment based upon a weighing of the relevant factors." *Balogh's of Coral Gables, Inc.,* 798 F.2d at 1358. Although the appellants' contentions regarding the exclusion of some of Furbee's proffered testimony presents a close question, we are ultimately unpersuaded that the district court should be reversed.

■ Our analysis of whether the lower court abused its discretion begins with the observation that the law of this Circuit strongly favors admitting evidence that may or may not relate to the indicted conspiracy and allowing the jury to decide whether the evidence relates to the conspiracy at issue (and thus is relevant evidence) or whether it relates to a separate and unrelated conspiracy (and, consequently, is irrelevant). *United States v. Gonzalez,* 940 F.2d 1413, 1422 & 1422 n. 17 (11th Cir.1991). A district court should, in most circumstances, admit such evidence with a Rule 104(b)[4] limiting instruction to the effect that the jury may consider the evidence only if it finds that the evidence relates to the indicted conspiracy. The jury, as the ultimate finder of fact, should be provided with all relevant information, especially when such information bears upon the ultimate guilt or innocence of the accused.[5]

■ Based on Furbee's testimony, it was possible, although not certain, that Furbee was acting as part of the same conspiracy in which the defendants allegedly participated. The trial court, in order to exclude portions of Furbee's testimony under Rule 403 because of a danger of jury confusion, had to find that the evidence established convincingly that Furbee's proffered testimony related to a conspiracy different

**2.** Rule 403 requires the exclusion of relevant evidence if its probative value is "substantially outweighed" by the evidence's tendency to cause undue prejudice. Fed.R.Evid. 403.

**3.** Rule 608(b) prohibits the impeachment of a witness through extrinsic evidence, other than convictions, of specific instances of misconduct. Fed.R.Evid. 608(b).

**4.** Rule 104(b) provides that:
   **Relevancy conditioned on fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

**5.** In the case *sub judice,* Furbee's proffered testimony would have tended to exculpate appellants. If Furbee was an active participant with several of the principals in the conspiracy and imported cocaine into the United States with them on several occasions, then evidence that Furbee did not know the defendants would tend to establish their lack of participation in the importation phase of the conspiracy and thus their innocence.

from the indicted conspiracy. *See Gonzalez,* 940 F.2d at 1422. According to *Gonzalez,* the question of whether evidence relates to the indicted conspiracy is one of fact that should normally be left for the jury.[6] *Id.; see also* Fed.R.Evid. 104(b). So long as a potential witness can identify key details and individuals in the indicted conspiracy, thus establishing "general knowledge of the overall goals" of a conspiracy, the witness' proffered evidence should be admitted, unless on the specific facts of a particular case proffered evidence fails to meet the relevance/prejudice balancing test mandated by Rule 403. *See Gonzalez,* 940 F.2d at 1422.

■ Were this panel conducting a *de novo* review of the district court's ruling, we would probably admit all of Furbee's proffered testimony. Based on the record before us, Furbee's testimony appears to be of the sort that, under *Gonzalez,* is properly left for the jury to consider. *Gonzalez,* 940 F.2d at 1422. The application of Rule 403 in conspiracy cases to exclude potentially relevant evidence (whether offered by a defendant or the government) because it might cause jury confusion will usually be inconsistent with the general rule favoring the admission of such evidence and allowing the jury to decide if it relates to the indicted conspiracy.[7]

This Court's role, however, is limited to reviewing the district court's determination for abuse of discretion. In this case, we are not prepared to say that a reasonable district court could not come to a conclusion contrary to our own without abusing its discretion. This Court has emphasized that "the trial judge is accorded the broadest discretion in determining whether evidence should be excluded under Rule 403." *Borden, Inc. v. Florida East Coast Ry. Co.,* 772 F.2d 750, 756 (11th Cir.1985). Despite our sincere concerns for the general presumption of admissibility of the kind of evidence at issue reflected in *Gonzalez,* we nevertheless conclude, giving the district court the "broadest discretion," that the lower court's Rule 403 ruling may stand. The district court heard Furbee's testimony and was in the best position to make the credibility determination that necessarily factors into a Rule 403 analysis.[8] We therefore affirm the district court's evidentiary ruling. We nevertheless caution the lower courts that the exclusion of potentially exculpatory evidence in conspiracy cases under Rule 403 should be the exception rather than the rule. Exclusion of evidence under Rule 403 is an unusual occurrence, and this is doubly so in circumstances where the presumption is that the jury has the right to decide the evidentiary question of whether the evidence relates to the indicted conspiracy. *Gonzalez,* 940 F.2d at 1422.

■ The district court also characterized Furbee's testimony as extrinsic evidence of specific actions offered for the purpose of impeaching the government witnesses' character, and held the evidence inadmissible under Rule 608(b). We reject this por-

---

**6.** This approach is entirely consistent with the law of this Circuit holding that "[a] single conspiracy does not become many simple because of the changing composition of the personnel comprising the conspiracy or because some members performed only a single function." *United States v. Meester,* 762 F.2d 867, 880 (11th Cir.), *cert. denied sub nom.,* 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985).

**7.** This is not to say that in a particular case a district court is precluded from finding that the relevance of specific evidence that may relate to the indicted conspiracy is "substantially outweighed" by its potential for prejudice. Fed. R.Evid. 403. Rule 403 can and should be used to bar the admission of evidence when its admission would interfere with the jury's ability to decide a case fairly.

**8.** The district court doubted Furbee's veracity, and believed that his recollections of the details of the conspiracy were sufficiently poor so as to raise substantial doubts as to whether his testimony related in any way to the indicted offense. These findings justified the exclusion of the evidence under Rule 403. Moreover, such findings are essentially factual determinations, which this Court will not reconsider unless clearly erroneous. The appellants have presented this Court no additional evidence suggesting that Furbee's familiarity with the details of the conspiracy was more substantial than the district court found it to be. Consequently, this Court has no basis from which to infer that the lower court's factual findings regarding the depth of Furbee's knowledge of the conspiracy were clearly erroneous.

tion of the district court's analysis. A trial judge's discretion "does not extend to the exclusion of crucial relevant evidence establishing a valid defense." *United States v. Wasman*, 641 F.2d 326, 329 (5th Cir. April 1981). With regard to the lower court's application of Rule 608(b), we observe that even if Furbee's proffered evidence was extrinsic, because it also "contradict[ed] material testimony ... it [was] relevant evidence and [could] no longer [be] considered collateral." *United States v. Russell*, 717 F.2d 518, 520 (11th Cir.1983). As this Court has explained, "[e]xtrinsic evidence of a witness' prior misconduct should be excluded where that evidence is probative only of the witness' general propensity for truthfulness; such evidence should be admitted, however, where it is introduced to disprove a specific fact material to the defendant's case." *United States v. Calle*, 822 F.2d at 1021. Furbee's proffered testimony was directly relevant to the material issue of the appellants' alleged participation in the smuggling operations. As such, it was more than evidence offered to impeach the credibility of the government's witnesses and could not be excluded under a Rule 608(b) analysis. Thus, we must reject the lower court's characterization of Furbee's testimony as mere character evidence. However, this does not affect the resolution of this case, because the district court's determination that Furbee's testimony failed Rule 403's prejudice balancing test is, by itself, sufficient to justify the district court's evidentiary ruling excluding portions of Furbee's proffered testimony.

## B. *Admission of Extrinsic Evidence of Prior Drug Smuggling*

The lower court allowed government witnesses to testify about prior, uncharged drug smuggling activities involving Nunez and Costa. Rule 404 prohibits the admission of extrinsic evidence of misconduct, except as provided in Rule 404(b). The lower court held that the evidence was admissible for the legitimate purpose, under Rule 404(b), of establishing intent, a material element of the conspiracy charge. Nunez and Costa claim that the extrinsic evidence should not have been admitted, because it was prejudicial and they did not specifically challenge the existence of intent. This contention is without merit.

In this Circuit, extrinsic evidence of unindicted bad acts is admissible if the evidence is relevant to an issue other than the defendant's character and the probative value of the evidence is not substantially outweighed by its potential for causing undue prejudice. *United States v. Hewes*, 729 F.2d 1302, 1314 (11th Cir.1984), *cert. denied sub nom.*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). Conspiracy was one of the substantive offenses at issue. One of the elements of conspiracy that the prosecution must establish beyond a reasonable doubt is an intention to further the purposes of the conspiracy. Extrinsic evidence of past bad acts is admissible to establish intent, provided the judge offers a limiting instruction to the jury to the effect that the evidence may not be used to establish that the defendant acted in conformity with the past behavior. Fed. R.Evid. 404(b). *See United States v. Miller*, 883 F.2d 1540, 1544 n. 4 (11th Cir.1989), *vacated pending en banc review*, 923 F.2d 158 (11th Cir.1991).

The appellants claim that they never specifically "put intent at issue," and therefore that the government could not rely on intent as a basis for the admission of the evidence. However, "[t]he law in this Circuit provides that intent becomes a material issue whenever a defendant pleads not guilty to a charge of conspiracy unless the defendant affirmatively withdraws the element of intent from the case." *United States v. Hernandez*, 896 F.2d 513, 523 (11th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 159, 112 L.Ed.2d 125 (1990). Because the defendants did not affirmatively take the issue of intent out of contention by stipulating that they possessed the requisite intent, the district court did not abuse its discretion in admitting evidence of unindicted extrinsic bad acts. *United States v. Cardenas*, 895 F.2d 1338, 1342 (11th Cir. 1990).

■ The second step for reviewing extrinsic evidence relates to whether the probative value of the evidence is outweighed by its prejudicial effect. The law in this Circuit requires that the Rule 404(b) evidence actually be necessary to establish the material element. *Hewes*, 729 F.2d at 1315–16. "The strength of the government's case is an important factor in determining the probative value of the extrinsic evidence. Extrinsic evidence is only relevant if it has a tendency to prove a fact that is at issue; thus, if the government's case is strong, there is no need for the evidence." *United States v. Miller*, 883 F.2d at 1545 n. 5. *See also Beechum*, 582 F.2d at 914 (strength of government's case a relevant factor when considering the probity of extrinsic bad acts evidence).

The government's case is not particularly strong on the issue of intent. Indeed, appellants in another argument suggest that the lower court's refusal to allow Furbee's testimony was sufficiently prejudicial to warrant a new trial because the government's only evidence of the appellants' participation in the conspiracy was testimonial. The appellants cannot now gainsay that the admission of the extrinsic evidence was unnecessary because the government's case was sufficiently strong without it. Therefore, we hold that the district court did not abuse its discretion in admitting the extrinsic evidence of unindicted bad acts.

## C. *The Three Importation Charges*

Costa and Nunez challenge their conviction on three counts of importing cocaine in the January 1985 importation. They argue that because the load started in one lump in the Bahamas and ultimately wound up as one lump in Florida, the fact that it actually came into the United States on three boats is irrelevant. Costa and Nunez claim that the three convictions for importing cocaine constitute multiplicitous convictions for the same offense. This argument lacks merit.

■ Although this court has condemned multiplicity when it exists, it does not exist on these facts. The government alleged conspiracy and three counts of importation. In order to avoid multiplicity, only one fact or element need be different between each charge. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Section 952 of Title 21 criminalizes the importation of cocaine into the United States. 21 U.S.C.A. § 952. Nothing in the statute suggests that one should aggregate the amount of drugs from the point of origin to the point of ultimate destination.[9] Rather, as each boat entered the territorial waters of the United States, the particular crew violated § 952. Because the importations were incident to a conspiracy, all members of the conspiracy are vicariously liable for each independent act in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 643–44, 646–47, 66 S.Ct. 1180, 1181–82, 1183–84, 90 L.Ed. 1489 (1946).

Appellants claim that *United States v. Fiallo–Jacome*, 784 F.2d 1064 (11th Cir. 1986), supports their contention that sentences for these acts of importation are multiplicitous. *Fiallo–Jacome* held that when a defendant is convicted of possession of a specific amount of contraband over a period of time, the defendant may not also be convicted with possession of some portion of the same contraband on a specific date. *Id.* at 1066–67. The indictment in *Fiallo–Jacome* alleged possession over a four month period and then again on a specific date; the court concluded that Fiallo possessed the cocaine continuously, and could not be convicted twice for the same act of possession. On the present facts, the appellants were charged with three counts of importation and with a single count of conspiracy to import the entire amount. The conspiracy count does not merge with the importation counts, nor do the importation charges count the same quantity of cocaine twice. Thus, the appellants cannot avail themselves of the *Fial-*

---

**9.** Were this argument to hold true, then even if the cocaine were smuggled into the United States at different locations via various means of transportation, there should be only one violation of § 952 provided that the smugglers are careful about ultimately reaggregating their goods.

lo–Jacome rule. This conclusion is consistent with this Court's clarification of *Fiallo–Jacome* in *United States v. Maldonado*, 849 F.2d 522 (11th Cir.1988). The *Maldonado* court held that there was no multiplicity where Maldonado was convicted on two counts of possession because the counts did not charge Maldonado twice for possessing the same quantity of cocaine. *Id.* at 524. Likewise, because the indictment in the present case did not make an importation charge for the entire quantity of cocaine, the government was free to charge the appellants with importing three distinct quantities of cocaine in three separate vessels. *See United States v. Vaughan*, 859 F.2d 863, 865 (11th Cir.1988) (emphasizing that *Fiallo–Jacome* involved double charging for same quantity of drug), *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989).

### D. *The Appellants' Remaining Six Claims*

Costa, Nunez, and Perry raise six additional arguments, none of which merits extended discussion. However, because the appellants have seen fit to raise them, this Court will address each specific claim.

■ All three appellants object to the district court's restrictions on the cross examination of government witness Ellsworth. The district court prohibited the appellants from quizzing Ellsworth on his views on the criminal justice system in general and the justice of his conviction in particular. The court allowed cross-examination for information regarding Ellsworth's plea agreement, for information about his involvement in the conspiracy, and for bias. Thus, the district court provided the defendants with the opportunity to cross-examine Ellsworth on any material issue. On these facts, there is no colorable claim that the court denied defendants their Sixth Amendment right to cross examine adverse witnesses. *United States v. Beale*, 921 F.2d 1412, 1424 (11th Cir.), *cert.*

denied, —— U.S. ——, 112 S.Ct. 100, 116 L.Ed.2d 71 (1991).

■ Costa objects to the district court's order that he not be eligible for parole until he serves at least one third of his sentence (20 years). The district court made this order pursuant to 18 U.S.C.A. § 4205(b)(1), which provides that a court may "designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court." This court in *United States v. Berry*, 839 F.2d 1487 (11th Cir.1988), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 863, 102 L.Ed.2d 987 (1989), held that § 4205 allowed a district court to either advance or postpone parole eligibility. *Id.* at 1488–89. Consequently, this argument is without merit.

■ Nunez appeals the lower court's failure to find a violation of the court's Federal Rule of Evidence 615 sequestration order based on an out-of-court conversation between two government witnesses (Roberto and Ellsworth). The district court heard testimony on the alleged breach of its sequestration order, but concluded that the evidence did not support a finding that government witnesses Roberto and Ellsworth breached the order. Having made a factual finding that the order was not breached, the district court declined to call a mistrial, strike the witnesses' testimony, or instruct the jury that the witnesses violated the order. The court did, however, allow Perry to cross-examine the witnesses about any conversations that they may have had during the pendency of the trial. The court did not allow Nunez to assert to the jury that the witnesses had violated the order, but did allow Nunez's counsel to tell the jury that the two witnesses had talked with each other about matters related to the pending case.[10] Because Nunez presents no evidence suggesting that the

---

10. Nunez's argument lacks merit given the court's finding that the order was not violated. Cross-examination is one of the three remedies provided for violations of sequestration orders, although it must usually be accompanied by a

court statement to the jury that the sequestration order was violated. *United States v. Lattimore*, 902 F.2d 902, 904 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 228 (1990).

district court was clearly erroneous in finding that the witnesses did not breach the court's order, this Court will defer to the lower court's handling of this problem.

 Appellant Perry argues that because the testimony regarding her involvement given by two government witnesses was not entirely consistent, she should have been acquitted pursuant to Federal Rule of Criminal Procedure 29.[11] The witnesses' testimony was far from irreconcilable and to the extent there were differences they did not establish Perry's innocence. The court correctly rejected Perry's Rule 29 motion.

Perry and Nunez challenge the length of their sentences as being disproportionate to those given to other indictees in the conspiracy who pled guilty. However, "[a] sentencing judge has broad discretion in the imposition of criminal sentences." *United States v. Restrepo*, 832 F.2d 146, 148 (11th Cir.1987). The sentences at issue were all well within the statutorily authorized range. "As long as the sentence is within statutory limits and there is no showing of arbitrary and capricious action amounting to an abuse of discretion, it will not be questioned on appeal." *United States v. Ard*, 731 F.2d 718, 727 (11th Cir. 1984). This point lacks merit because the sentences were within the statutory limits and the appellants have produced no evidence suggesting that the district court acted arbitrarily and capriciously.

Finally, Perry asks for a reversal and a remand because the court admitted a "brown box" containing cocaine into evidence at trial. The cocaine found on the boat was in yellow and blue bags. Counsel for the United States explains that the brown box contained nine packages of cocaine and was merely used to carry the cocaine into the courtroom. The parties stipulated that the government discovered

163 packages of cocaine weighing 360 pounds on the seized boat. Moreover, Perry made no objection to the admission of the brown box at trial. This point is utterly without merit.

## IV. CONCLUSION

For the foregoing reasons, the criminal convictions of appellants Costa, Nunez, and Perry are AFFIRMED.

---

11. **Rule 29. Motion for Judgment of Acquittal (a) Motion Before Submission to Jury.**
   Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of [sic] its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.