[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16552
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 30, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00226-CR-T-17MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEMETRIUS MCLAUGHLIN,
a.k.a. Deke,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 30, 2005)

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Demetrius McLaughlin, who currently is serving concurrent terms of life and twenty years' imprisonment, appeals his convictions, imposed pursuant to a jury verdict, for one count of conspiracy to manufacture 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii) (Count 1); and one count of possession of pseudoephedrine, knowing it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2 (Count 2). On appeal, McLaughlin argues that the district court erred on the following two grounds: (1) by allowing the government to present evidence of his prior criminal history under Fed. R. Evid. 404(b) ("Rule 404(b)"); and (2) by denying his motion for judgment of acquittal based on insufficient evidence.[1] After careful review, we affirm.

---

[1] We are unpersuaded by McLaughlin's additional argument, that the district court erred by imposing a career-offender sentence pursuant to the Sentencing Guidelines and enhancing his offense level for prior convictions that were neither admitted by him nor proven to a jury beyond a reasonable doubt, in violation of United States v. Booker, 543 U.S. ---, 125 S. Ct. 738, 756, 160 L. Ed. 2d 621 (2005). It is well-established that the Sixth Amendment does not require a defendant's prior convictions to be found by the jury. See Almendarez-Torres v. United States, 523 U.S. 224, 234, 118 S. Ct. 1219, 1226, 140 L. Ed. 2d 350 (1998). In Booker, the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 543 U.S. at ---, 125 S.Ct. at 756 (emphasis added). The Supreme Court's decision in Almendarez-Torres "was left undisturbed by Apprendi, Blakely, and Booker" and "a district court does not err by relying on prior convictions to enhance a defendant's sentence." United States v. Shelton, 400 F.3d 1325, 1327 (11th Cir. 2005); see also United States v. Cantellano, --- F.3d ----, 2005 WL 3042675 *6 (11th Cir. Nov. 15, 2005) (observing that "[w]e have repeatedly rejected" argument that Booker "called into question" Almendarez-Torres) (citing cases); United States v. Orduno-Mireles, 405 F.3d 960, 962 (11th Cir.) (finding no Sixth Amendment violation based on 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) for prior convictions), cert. denied, 126 S.Ct. 223 (2005). Accordingly, there was no Sixth Amendment violation under Booker.

2

Normally, this Court reviews for abuse of discretion a district court's ruling on the admissibility of evidence of uncharged conduct under Rule 404(b). See United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003). However, because McLaughlin raises this claim for the first time on appeal, we review the issue for only plain error. Id. "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." Id. (quotation and citation omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.) (quotation and citation omitted), cert. denied, --- U.S. ----, 125 S.Ct. 2935, 162 L. Ed. 2d 866 (2005) Id.

We review the district court's denial of a motion for judgment of acquittal de novo, viewing the facts and drawing all inferences in the light most favorable to

---

Moreover, at sentencing, the district court's now-erroneous assumption that the Guidelines were mandatory was harmless because McLaughlin was subject to a statutory mandatory minimum sentence of life imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A). Cf. United States v. Raad, 406 F.3d 1322, 1323 n. 1 (11th Cir.) (finding harmless Booker error where district court sentenced defendant in accordance with the statutory mandatory minimum), cert. denied, 126 S. Ct. 196 (2005). Indeed, the district court stated the following in imposing a life-term of imprisonment: "The reasons for imposing the selected sentence [is] as follows: The sentence imposed is required by the statute." After Booker, district courts remain bound by statutory minimum sentences. See Shelton, 400 F.3d at 1333 n. 10. Thus, we readily conclude that any Booker statutory error in this case was harmless because the court could not have imposed a lesser sentence due to the statutory minimum.

3

the government. <u>United States v. Descent</u>, 292 F.3d 703, 706 (11th Cir. 2002). To affirm the denial of a Fed. R. Crim. P. 29 motion, we need determine only that a reasonable fact finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt. <u>Id.</u> The jury is free to choose between or among reasonable conclusions to be drawn from the evidence presented during trial, and the court must accept the jury's reasonable inferences and credibility determinations. <u>United States v. Sanchez</u>, 722 F.2d 1501, 1505 (11th Cir. 1984).

The relevant facts are straightforward. On June 11, 2003, McLaughlin, co-conspirators James Howze and Teresa Sutton, and two others were indicted for conspiring to manufacture fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii), and related possession-with-intent-to-distribute charges. The indictment also included a forfeiture count. Sutton and Howze entered guilty pleas to the conspiracy count and McLaughlin proceeded to a jury trial. Sutton testified as a government witness against McLaughlin.

Prior to trial, the government submitted an Information and Notice of prior convictions and a Notice of Intent to introduce evidence at trial of McLaughlin's prior convictions, pursuant to Fed. R. Evid. 404(b). The Information stated that McLaughlin was subject to increased penalties and a statutory mandatory minimum sentence, pursuant to 21 U.S.C. § 841(b), based on his prior state court conviction on September 9, 2002, for possessing and selling cocaine. The Notice

4

of Intent indicated that McLaughlin's prior drug conviction was evidence of his knowledge and intent to commit the charges at issue. McLaughlin did not object to or otherwise oppose either the Information or the Notice of Intent.

The government subsequently filed a second pre-trial Notice of Intent, this time specifying both (1) the prior conviction referenced in the first Notice, and (2) evidence of McLaughlin's prior distribution of cocaine to an undercover officer. As to the latter, in its Notice of Intent, the government argued that the evidence was "inextricably linked" to the charges in the indictment and should be admitted independent of Rule 404(b). Alternatively, the government argued the evidence of prior distributions to an undercover officer was otherwise admissible under Rule 404(b). As with the first Notice of Intent, McLaughlin did not object to the second Notice of Intent.

At trial, Sutton testified that, in early July 2002, McLaughlin came to her residence in order to help her move a green tank of anhydrous ammonia, which is commonly used to manufacture methamphetamine. They took the tank to the "Gator Farm," where McLaughlin lived and where Howze sometimes manufactured methamphetamine. Subsequently, on July 16, 2002, McLaughlin returned to Sutton's home, and she asked him to come back later to help her transport some items that were being delivered to her. These items consisted of lithium batteries, which were stripped, and Sudafed pills, which were crushed, all for the purpose of converting the materials into methamphetamine.

McLaughlin returned to Sutton's residence, at which point they decided "to take the stuff out to another person's house to be manufactured into meth[amphetamine]." McLaughlin and Sutton then loaded "the stuff" into the back of the truck and left. According to Sutton, McLaughlin had smoked methamphetamine previously and told her that he wanted to manufacture methamphetamine in order to earn money that would enable him to hire an attorney to resolve some charges then pending against him. McLaughlin had not previously sold methamphetamine with Sutton, but she believed that he had done so on his own. During her testimony, Sutton stated that she had been a drug addict for three and one-half years.

In addition to Sutton's testimony, the government presented the testimony of three law enforcement officers who took part in the investigation and surveillance of Sutton's house on July 16, 2002. Detective Michael Milke, a narcotics officer with the Pasco County Sheriff's Office ("PCSO"), testified that, based on an anonymous tip that methamphetamine was being sold from Sutton's residence, he conducted surveillance of the premises on that day. He observed McLaughlin arrive on the premises and back up his pick-up truck to the rear of the residence. Detective Mile then observed three people (later identified as Sutton, McLaughlin, and a third individual) loading the bed of the truck with black bags "in a very frantic pace." He noticed that one person appeared to be serving as a lookout.

6

After the individuals got into the truck and drove away, Milke notified other officers of the vehicle's departure.

Detective Paul Thompson, another PSCO officer involved in the investigation and working undercover, also observed the truck leaving the campgrounds. He recognized McLaughlin, who was not one of the investigation's targets at that point, as the driver. In the course of another undercover investigation, which took place at the end of 2001 and beginning of 2002, Detective Thompson had purchased crack cocaine from McLaughlin on several occasions. Notably, when Thompson testified about the prior crack sales, McLaughlin did not object.[2] Detective Thompson also recognized a second individual (Sutton) in the pickup truck. Sutton had been identified by the CI as being involved in the manufacture and sale of methamphetamine.

During a subsequent vehicle stop, McLaughlin and Sutton gave false names and McLaughlin did not have a driver's license. McLaughlin was arrested for driving without a license and giving a false name, and Sutton was arrested for providing a false name. After the arrests, the officers recovered from the truck-bed items and substances used to manufacture methamphetamine, including five-gallon buckets, muriatic acid, drain opener containing sulfuric acid, camp fuel, table salt,

---

[2]McLaughlin did object to Thompson's subsequent testimony that McLaughlin "actually separated . . . my narcotics from the rest of them - - - the crack that he had so he could sell me just the right amount," as irrelevant to the overall line of testimony. This objection was overruled. McLaughlin does not argue, and we do not construe, the relevancy objection was related to Thompson's earlier testimony that McLaughlin previously sold him crack cocaine.

lithium batteries, two boxes of Sudafed pills, and two bags of ground pseudoephedrine pills. In a post-arrest conversation with a CI, McLaughlin advised the CI of where a green tank -- anhydrous ammonia, commonly used to manufacture methamphetamine, is stored in large green or grey tanks -- could be found and of how to find a third individual, "Fast Eddie" (co-defendant Howze).

During the defense case-in-chief, McLaughlin testified on his own behalf and presented the testimony of Howze. Howze stated that he had never manufactured methamphetamine with McLaughlin, had never seen McLaughlin engage in drug activity, and had not seen McLaughlin with an ammonia tank. He also said that he (Howze) and Sutton had manufactured methamphetamine together numerous times.

During his testimony, McLaughlin claimed that he was at Sutton's home to see somebody about car and motorcycle repairs. McLaughlin stated that he agreed to give Sutton a ride to a nearby city but, at the time he was stopped, was unaware of the items which Sutton had placed in the back of his truck. McLaughlin said, "I sell drugs myself, so I should know what a drug transaction looks like" in support of his claim that he was not involved in the July 16, 2002 methamphetamine scheme with which he was charged.

At the close of trial, McLaughlin renewed his motion for judgment of acquittal, which was again denied. The jury found McLaughlin guilty as charged and returned a special verdict finding him responsible for more than 50 grams of

8

methamphetamine.    Pursuant to the recommendation of the Presentence Investigation Report ("PSI"), and over McLaughlin's objections, the district court sentenced McLaughlin to concurrent sentences of life imprisonment on Count 1 and 20 years' imprisonment on Count 2.[3]  This appeal followed.

First, McLaughlin challenges the admission of Detective Thompson's testimony that McLaughlin previously sold him crack cocaine and was out on bond following drug charges, as well as the arresting officer's statement that he verified McLaughlin's identity using law enforcement databases.  McLaughlin contends this testimony was improper Rule 404(b) evidence.[4]  Again, McLaughlin makes this claim for the first time on appeal, having failed to object in the district court, either prior to trial when the government filed its Notice and Information or during Detective Thompson's or the arresting officer's testimony.

---

[3]The PSI recommended a base offense level of 32, pursuant to U.S.S.G. § 3D1.2(b), because the offense involved more than 50 grams but less than 150 grams of methamphetamine. The PSI also stated that McLaughlin was subject to a five-level enhancement as a career offender, pursuant to § 4B1.1, and a mandatory statutory minimum sentence of life imprisonment for the conspiracy count, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851(b).

[4]  Rule 404 provides, inter alia:

> (b) Other Crimes, Wrongs, or Acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Rule 404(b) permits the admission of prior-bad-acts evidence to show motive, preparation, knowledge, and intent, as well as an ongoing scheme or plan. See United States v. Lehder-Rivas, 955 F.2d 1510, 1515-16 (11th Cir. 1992); United States v. Cross, 928 F.2d 1030, 1047-48 (11th Cir. 1991). In reviewing 404(b) decisions, we apply a three-part test for admissibility of such evidence: (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act; and (3) the evidence must have probative value that is not substantially outweighed by undue prejudice. See United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003).

The evidence of McLaughlin's prior drug arrests was relevant to the issue of his state of mind with respect to the charged offenses. "One of the elements of conspiracy that the prosecution must establish beyond a reasonable doubt is an intention to further the purposes of the conspiracy." United States v. Costa, 947 F.2d 919, 925 (11th Cir. 1991). When a defendant charged with conspiracy enters a plea of not guilty, as in this case, he makes intent a material issue in the case. See id.; United States v. Delgado, 56 F.3d 1357, 1365 (11th Cir. 1995). McLaughlin did not "affirmatively take the issue of intent out of contention by stipulating that [he] possessed the requisite intent," Costa, 947 F.2d at 925. Indeed, his theory of defense was that he was in the wrong place at the wrong time. Moreover, the government presented sufficient evidence from which a jury could

find that McLaughlin committed the prior drug crimes for which he was arrested. Indeed, during his own testimony McLaughlin did not dispute the prior drug convictions.[5] In short, we can find no plain error in the admission of the disputed testimony.

We are likewise unpersuaded by McLaughlin's challenge to the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the government, there was abundant evidence to sustain the verdict. In addition to co-conspirator Sutton's testimony, including that McLaughlin agreed to go with her to Howze's residence to manufacture methamphetamine, the government presented the testimony of three law-enforcement officers who observed McLaughlin's activities on July 16, 2002. The officers described how McLaughlin was arrested, after giving a false name, while driving a vehicle containing items commonly used to manufacture methamphetamine, including pseudoephedrine. Although McLaughlin testified that he was unaware of the items in the truck bed and that he was not guilty of the crimes charged, and Howze testified that he was unaware of McLaughlin's participation in the crime, the jury was entitled to disbelieve all or portions of their testimony. See Chastain, 198 F.3d at 1351.

---

[5]For this same reason, we cannot say that any prejudice outweighed the probative value of the challenged testimony. Indeed, there was no prejudice in light of McLaughlin's own testimony that he sold crack cocaine to Detective Thompson and others on numerous occasions and had previously been convicted of selling crack cocaine.

Similarly, though he argues that Sutton's testimony was unreliable, it was not incredible as a matter of law, and the jury was entitled to believe her. Id. Testimony is incredible as a matter of law only when it is "unbelievable on its face" and relates to "facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997) (internal quotation and citation omitted). Our review of the trial transcript of Sutton's testimony reveals that the testimony does not meet this high standard.

Based on the foregoing, we affirm McLaughlin's convictions and sentence.

**AFFIRMED.**