[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11642
Non-Argument Calendar
_____

D.C. Docket No. 9:18-cr-80139-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUNIOR JOEL JOSEPH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 9, 2020)

Before LUCK, LAGOA and BLACK, Circuit Judges.

PER CURIAM:

Junior Joseph appeals his convictions for conspiring to export firearms to Haiti without authorization, 18 U.S.C. § 371 (Count 1); knowingly and willfully exporting rifles, pistols, and ammunition without authorization from the United States State Department, 22 U.S.C. § 2778 (Count 2); exporting shotguns without authorization from the United States Department of Commerce, 50 U.S.C. §§ 1702 and 1705 (Count 3); fraudulently and knowingly attempting to export firearms, 18 U.S.C. § 554 (Count 4); and knowingly making false statements in documents those licensed to sell firearms must keep, 18 U.S.C. § 924(a)(1)(A) (Count 5). He advances two arguments on appeal. First, he asserts the Government failed to present sufficient evidence for a reasonable juror to conclude that he was guilty of Counts 1 through 5 beyond a reasonable doubt. Second, he contends the district court clearly erred in finding that an out-of-court conversation between two Government witnesses was only a technical violation of the sequestration rule and abused its discretion in finding that the conduct was remedied through cross-examination. After review, we affirm Joseph's convictions.

## I.  DISCUSSION

*A.  Sufficiency of the Evidence*

Two standards of review govern Joseph's sufficiency arguments. As to Counts 1 through 4, we will review his arguments under a *de novo* standard of review. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007) (reviewing

2

*de novo* the denial of a motion for judgment of acquittal on sufficiency grounds). However, where the defendant fails to challenge the sufficiency of the evidence on a particular count, as Joseph failed to do on Count 5, this Court reviews the sufficiency of the evidence on that count for a manifest miscarriage of justice. *See United States v. Tagg*, 572 F.3d 1320, 1323 (11th Cir. 2009). A miscarriage of justice occurs when the evidence of an "element of the offense is so tenuous that a conviction would be shocking." *Id.*

When determining sufficiency, we view the evidence "in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor." *Browne*, 505 F.3d at 1253. We will affirm a district court's denial of a motion for judgment of acquittal if a reasonable jury could conclude the evidence establishes the defendant's guilt beyond a reasonable doubt. *Id.* This standard does not require the evidence to be inconsistent with every reasonable hypothesis other than guilt, but rather, the jury may choose between reasonable conclusions based on the evidence. *Id.*

### 1. Count 1

To prove Count 1, the Government had to present evidence Joseph conspired "to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose," and committed any act to effect the object of the conspiracy. *See* 18 U.S.C. § 371. The elements of a

conspiracy under 18 U.S.C. § 371 consist of: "(1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). Furthermore, it is unnecessary that the Government prove that Joseph knew all of the details or participated in every aspect of the conspiracy. *United States v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015). Rather, the Government must only prove that Joseph knew of the essential aspects of the conspiracy. *Id.*

The jury heard sufficient evidence to reasonably infer that Joseph knew of and agreed with others to export the firearms to Haiti. First, the Government was allowed to prove its case through circumstantial evidence, despite Joseph's arguments to the contrary, and the jury was allowed to make reasonable inferences from that evidence. *See id.* (explaining the government may prove a conspiracy by circumstantial evidence); *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008) ("When the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction."); *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004) (stating circumstantial evidence may prove knowledge and intent). The evidence showed Joseph spoke with Michael Foreman, Kevin Beary, James Anzalone, Vernon Starnes, and Susana Anderson about exporting firearms and equipment to Haiti. Although Joseph

4

asserts that his brother Jimy purchased and exported the firearms, the companies indicated sales to Global Dynasty generally, not specifying whether it was Jimy, rather than Joseph, who made the purchase.

The evidence also reflects that Joseph purchased two large gun safes and was aware of the transfer of the firearms to Jimy prior to their export, as seen in the Form 4473s. The jury further heard that Joseph: (1) paid Jimy $4,000 the day before Jimy paid to have the truck shipped to Haiti, (2) paid for Jimy's plane ticket to Haiti, and (3) discussed the truck's arrival and firearms sales with Haitian officials and nationals, specifically, Edward Dollar, Aramick Louis, Nicholas Herve, and Senator Herve. Although Charles Durand and David St. Vil had more contact with Jimy than with Joseph and Joseph was not present when Durand helped Jimy move the boxes or at the delivery of the truck to Monarch Shipping, the Government was not required to prove Joseph's knowledge of, or participation in every aspect of, the conspiracy. *See Moran*, 778 F.3d at 960. The Government proved that Joseph knew of the "essential aspects" of the conspiracy. *See id.* As such, the jury reasonably inferred that Joseph agreed to, knew about, and participated in the export of the firearms. *See Hasson*, 333 F.3d at 1270.

### 2. *Counts 2 through 4*

The Arms Export Control Act (AECA), which regulates the commercial export from the United States of the arms and ammunitions categorized as

"defense articles," imposes criminal sanctions for willful violations of its regulations. 22 U.S.C. § 2778. The export of defense articles requires a license under the AECA. *United States v. Man,* 891 F.3d 1253, 1265 (11th Cir. 2018). To prove Count 2, the Government had to show a willful violation—that Joseph knew that it was unlawful to export the firearms and intentionally violated the "known legal duty" not to export them. *Id.* at 1268. It is insufficient to show Joseph was merely aware of the general unlawful nature of his actions. *Id.*

Similarly, the International Emergency Economic Powers Act (IEEPA) grants the president the power to "regulate . . .any . . . importation or exportation of . . . any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B). Under the delegated authority, the Commerce Department may prohibit the export of certain items without a license. *See* 50 U.S.C. § 1701; 15 C.F.R. Pt. 764. Consequently, to prove Count 3, the Government had to show Joseph willfully committed, attempted to commit, or conspired to commit a violation of a regulation issued under the IEEPA. 50 U.S.C. § 1705(c).

To prove Count 4, the Government had to show Joseph "fraudulently or knowingly export[ed] or sen[t] from the United States, or attempt[ed] to export or send from the United States, any merchandise, article, or object contrary to any law

6

or regulation of the United States." *See* 18 U.S.C. § 554(a).  Knowledge, under Count 4, may also be proven through a showing of willful blindness if the facts support an inference that Joseph was aware of a high probability of the existence of a fact in question.  *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008).

The Government presented sufficient evidence for the jury to convict Joseph of Counts 2, 3, and 4.  The jury heard from numerous witnesses that Joseph represented that he either had, or was applying for, the appropriate licenses, and that he knew of his obligation to be licensed. The jury also heard the State Department had, in fact, denied Joseph's application and the Commerce Department had revoked his license.  Although Joseph asserts that the one Form 4473 that notes "hold for export" demonstrates that he was not willfully involved with any smuggling or violations of the licensing requirements, the jury heard, however, that after the licenses were denied Joseph (1) paid Jimy $4,000 before Jimy paid for the truck, (2) messaged Herve with information about the truck's shipment, (3) messaged Dollar about picking up the truck, and (4) messaged Louis about paying for 200 shotguns. From this evidence, the jury reasonably inferred that Joseph willfully acted in violation of the licensing requirements, and as to Count 4, specifically, that Joseph was, at the very least, willfully blind.  *See Man*, 891 F.3d at 1265; *Steed*, 548 F.3d at 977; 50 U.S.C. § 1705(c); 18 U.S.C. § 554.

7

### 3. Count 5

Finally, to prove Count 5, the Government had to show Joseph knowingly made a false statement with respect to information federally licensed firearms dealers are required to keep. 18 U.S.C. § 924(a)(1)(A). The Government's evidence was not so tenuous as to Count 5 as to constitute a miscarriage of justice. *See Tagg*, 572 F.3d at 1323. The jury heard that St. Vil met with Jimy at Global Dynasty and signed paperwork purchasing a gun without ever possessing the firearm and Joseph was also at Global Dynasty while he and Jimy did the paperwork. St. Vil also testified that he returned later to complete the paperwork and provided Joseph—not Jimy—with his identification to support the Form 4473. Though Jimy's initial interaction with St. Vil alone may have been insufficient to infer Joseph had knowledge of the transaction, Joseph's later transaction in addition to his knowledge of the record keeping requirements for maintaining his license—which he acknowledged—does not present such a tenuous factual basis for his conviction as to constitute a miscarriage of justice. *See id.*; 18 U.S.C. § 924(a)(1)(A).

### B. Sequestration

We review the district court's finding of whether a sequestration order was violated for clear error but review the remedy for abuse of discretion. *United States v. Costa*, 947 F.2d 919, 927-28 (11th Cir. 1991) (violation); *United States v.*

*Jimenez*, 780 F.2d 975, 980 (11th Cir. 1986) (remedy). Once a party invokes the rule of sequestration, the district court must exclude witnesses from court proceedings to prevent them from hearing one another's testimony. Fed. R. Evid. 615. When a witness violates the rule, the district court may impose sanctions, including citing the violator for contempt, allowing cross-examination about the nature of the violation, or, when a party has suffered "actual prejudice" and there has been a collusion by the witness or counsel to violate the rule, the court may strike testimony already given or disallow further testimony. *United States v. Blasco*, 702 F.2d 1315, 1327 (11th Cir. 1983). Absent such misconduct, however, allowing cross-examination ordinarily cures the violation by equipping the factfinder to evaluate the witness's credibility. *United States v. Eyster*, 948 F.2d 1196, 1211 (11th Cir. 1991).

The district court did not clearly err or abuse its discretion in the manner in which it handled the violation of the sequestration order. The district court asked Anderson the scope of her discussion with William Posick, to which she stated their discussion was limited to the generalities of how to clearly discuss the terms and types of documents she would testify to. Based on her testimony, the district court did not clearly err in finding this did not constitute the type of collusion prohibited by the rule because there was no indication that Anderson spoke with Posick for the purpose of shaping her testimony to match his. *See Blasco*, 702

F.2d at 1327.  Also, because there was no indication of collusion, the district court did not err in implicitly finding Joseph did not suffer actual prejudice.  *See id.*  As such, the district court did not abuse its discretion in allowing counsel to cross-examine Anderson as to her and Posick's discussion and leaving the jury to conclude the ultimate weight given to her testimony.  *See Eyster*, 948 F.2d at 1211.

## II.  CONCLUSION

The district court did not err in denying Joseph's motion for judgment of acquittal because the evidence was sufficient for a reasonable juror to conclude he committed Counts 1 through 4 beyond a reasonable doubt.  Similarly, the evidence was sufficient to support Joseph's conviction on Count 5 and, therefore, the court did not commit a miscarriage of justice by allowing it to go to the jury.  Second, the district court did not clearly err in determining the two witnesses' out-of-court conversation did not violate the purpose of the rule of sequestration, as they did not intend to change their testimony, and, in any event, the district court did not abuse its discretion in allowing any error to be remedied through cross-examination. Accordingly, we affirm Joseph's convictions.

**AFFIRMED.**