[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11868
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 10, 2012
JOHN LEY
CLERK

D.C. Docket No. 6:09-cr-00096-MSS-KRS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS MIRANDA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 10, 2012)

Before HULL, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

This appeal presents the issue whether Jesus Miranda, who acquired seven firearms in exchange for 50 grams of heroin, possessed a firearm in furtherance of a drug trafficking offense. 18 U.S.C. § 924(c)(1)(A). Along with every other circuit court that has decided this issue, we conclude that bartering drugs for firearms furthers trafficking in drugs. We affirm Miranda's conviction.

## I. BACKGROUND

In 2009, Miranda offered to purchase firearms from Eric Hernandez. Unbeknownst to Miranda, Hernandez was a special agent on a task force to prevent trafficking in narcotics and weapons between Florida and Puerto Rico. In several telephone conversations, Miranda stated that he wanted firearms that were fully automatic, and he offered to pay with heroin in lieu of cash.

Miranda was anxious to acquire firearms. When Hernandez asked to purchase a sample of heroin, Miranda asked Hernandez to pay with firearms, but Hernandez insisted on paying with cash. During the meeting, the men resumed their discussion about firearms and Miranda said that he "need[ed] a lot of guns" because he had a customer in Puerto Rico who was "desperate to receive the firearms." When Hernandez asked about a date for the sale, Miranda responded that he wanted the firearms "right now," "he was ready" for the transaction, and he sought assurance from Hernandez that the firearms he would transfer would not be

2

"fake." Miranda then retrieved from his pants several plastic bags of heroin and sold Hernandez one bag of seven grams of heroin for $700.

A few days later, Hernandez initiated a three way telephone call between himself, Miranda, and Richard Zayas, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Miranda was angry at Hernandez for failing to respond to telephone calls about the firearms, which Miranda wanted "as soon as possible." Hernandez and Zayas agreed to sell four handguns and three fully automatic machine guns in exchange for 57 grams of heroin. Miranda asked for more firearms and asked to conduct the transaction "right now," but Hernandez and Zayas refused. Later that day, Miranda sent Hernandez a text message to "bring all the firearms" that he had available.

On the day of the transaction, Miranda met the two agents. Zayas demonstrated how to use the three machine guns, and Miranda examined thoroughly one of the machine guns and inserted an empty ammunition magazine into the gun. Zayas asked to see the heroin, but Miranda refused to produce the drugs until he had inspected the handguns. Zayas retrieved an insulated bag used to transport pizza that contained the four handguns. Zayas handed the guns to Miranda, and Miranda tested each gun. After Miranda determined that the guns were operational, he gave Zayas 50 grams of heroin and offered to give Zayas 10

3

more grams of heroin in a future transaction. Zayas placed the seven guns inside the insulated bag and carried them to Miranda's vehicle. After Miranda placed the bag in the passenger seat of his vehicle, federal agents arrested Miranda.

A grand jury charged Miranda in a superseding indictment with five crimes, including possession of a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). Miranda moved to dismiss the possession charge on the ground that it failed to state a crime. Fed. R. Crim. P. 12(b)(3)(B). The district court denied Miranda's motion and ruled that Miranda's receipt of firearms in exchange for drugs violated section 924(c)(1)(A) based on our definition of "possession in furtherance" in United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002), and the decisions of other circuit courts.

At trial, Miranda moved for a judgment of acquittal on the possession charge after the government rested its case, but the district court denied the motion for the same reasons that it had denied Miranda's motion to dismiss. The jury found Miranda guilty of the firearms charge and the other four crimes charged in his indictment. The district court sentenced Miranda to 183 months of imprisonment.

## II. STANDARD OF REVIEW

4

We review de novo both the denial of Miranda's motion to dismiss his indictment as legally insufficient and his motion for a judgment of acquittal. United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011); United States v. Friske, 640 F.3d 1288, 1290 (11th Cir. 2011). "Evidence is sufficient to support a conviction where 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Timmons, 283 F.3d at 1250 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).

### III. DISCUSSION

Miranda argues that the district court erred by refusing to dismiss his charge of and later adjudging him guilty of possessing a firearm in furtherance of a drug trafficking offense. 18 U.S.C. § 924(c)(1)(A). Miranda argues, based on the decisions of the Supreme Court in Watson v. United States, 552 U.S. 74, 128 S. Ct. 579 (2007), and of this Court in United States v. Montano, 398 F.3d 1276 (11th Cir. 2005), that his "passive receipt" of firearms did not further a drug trafficking offense. Miranda's argument is irreconcilable with the plain language of section 924(c), the decisions of the Supreme Court and our Court, and the decisions of every sister circuit that has decided the issue.

The original version of section 924(c)(1) imposed a minimum sentence of five years of imprisonment if a defendant "during and in relation to any . . . drug trafficking crime . . . use[d] or carrie[d] a firearm." See Smith v. United States, 508 U.S. 223, 227, 113 S. Ct. 2050, 2053 (1993). In Smith, the Supreme Court affirmed our decision that bartering a firearm to obtain drugs involved "use" of a firearm in violation of section 924(c). Id. Two years later, the Supreme Court held in Bailey v. United States, 516 U.S. 137, 145–50, 116 S. Ct. 501, 506–09 (1995), that mere possession of a firearm in the vicinity of a drug transaction did not constitute "use" under section 924(c) because the term required the defendant's "active employment" of the firearm.

Three years after the Supreme Court decided Bailey, Congress amended section 924(c)(1). In "direct response" to the statement in Bailey that section 924(c) could have included the word "possess" if Congress had "intended possession alone to trigger liability under § 924(c)(1)," 516 U.S. at 143, 116 S. Ct. at 506, Congress amended the provision to penalize a defendant "who, in furtherance of [a drug trafficking crime], possesses a firearm," 18 U.S.C. § 924(c)(1)(A). United States v. O'Brien, 560 U.S. ___, 130 S. Ct. 2169, 2179 (2010). Congress sought to address the dangers inherent in having firearms in the proximity of drug transactions when their presence was intended "to advance or

6

promote the criminal activity." Timmons, 283 F.3d at 1252 (quoting H.R. Rep. 105-344, at 12 (1997)).

This Court later ruled that the opposite transaction of Smith—that is, bartering drugs in exchange for guns—did not constitute "use" of a firearm under section 924(c)(1)(A). Montano, 398 F.3d at 1283–84. We held that Montano's negotiations to acquire firearms and his viewing of the guns before he transferred methamphetamine to a federal agent did not involve the type of "active employment" required under Bailey to constitute "use" of the firearms. Id. at 1280–84. We reasoned that because "[t]he firearms were never in Montano's possession, either actually or constructively," and he never exercised any "dominion or control over the firearms," he lacked the "means" by which to "use" the guns as contemplated in section 924(c)(1)(A). Id. at 1284.

In Watson, the Supreme Court likewise decided that "a person does not 'use' a firearm under [section] 924(c)(1)(A) when he receives it in trade for drugs." 552 U.S. at 83, 128 S. Ct. at 586. The Court reasoned that "the first possessor is the one who 'uses' the gun in the trade." Id. at 81, 128 S. Ct. at 584. Because the buyer, a government agent, "used" a pistol to obtain Watson's drugs, Watson did not "use[] the pistol in the trade." Id. at 79, 128 S. Ct. at 583.

7

Miranda argues that, under the reasoning of <u>Watson</u> and <u>Montano</u>, he did not possess a firearm in furtherance of a drug trafficking offense, but we disagree. The decisions in <u>Watson</u> and <u>Montano</u>, which construed the term "use" in section 924(c), do not pertain to Miranda's charge of "possession." The Court in <u>Bailey</u> recognized that "use" and "possession" differ, 516 U.S. at 143–50, 116 S. Ct. at 506–09, and Congress, in its amendment of section 924(c), employed the two terms in different phrases to proscribe different types of misconduct, see <u>O'Brien</u>, 560 U.S. at __, 130 S. Ct. at 2179. The Court in <u>Bailey</u> held that "'use' must connote more than mere possession of a firearm," 516 U.S. at 143, 116 S. Ct. at 506, and the Court in <u>Watson</u> criticized as "peculiar" and "underwhelming" the argument of the government that bartering drugs to obtain a gun could be punished both as prohibited "use" and "possession" of a firearm, 552 U.S. at 83, 128 S. Ct. at 585–86.

Miranda's argument also is inconsistent with our decision in <u>United States v. Timmons</u>, where we held that a defendant possesses a firearm in furtherance of a crime when "the firearm helped, furthered, promoted, or advanced the drug trafficking." 283 F.3d at 1252. We explained that our interpretation of section 924(c)(1)(A) was supported by the legislative history of the amended statute to punish the act of possessing a firearm in the proximity of trafficking in drugs when

8

the firearm was intended to "'advance or promote the criminal activity.'" Id. (quoting H.R. Rep. 105-344 at 12). So long as the prosecution offers proof "'of some nexus between the firearm and the drug selling operation,'" the defendant is subject to enhancement of his sentence under section 924(c)(1)(A). Id. (quoting United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001)).

Miranda possessed firearms in furtherance of his drug trafficking crimes. The firearms were integral to Miranda's drug trafficking. Miranda sought to purchase as many firearms as possible and, after inspecting the firearms to ensure that they were operational, gave Zayas 50 grams of heroin. Miranda's demand for firearms as consideration for the heroin undoubtedly "furthered, promoted, or advanced" his drug trafficking crime. Timmons, 283 F.3d at 1252.

Our decision is consistent with the decisions of every sister circuit that has considered the issue. Seven circuit courts —the First, Second, Fourth, Sixth, Seventh, Ninth, and Tenth Circuits— have held that bartering drugs to acquire firearms constitutes "possession in furtherance of" a drug trafficking crime. United States v. Robinson, 627 F.3d 941, 955 (4th Cir. 2010); United States v. Gurka, 605 F.3d 40, 41 (1st Cir.), cert. denied, 131 S. Ct. 360 (2010); United States v. Gardner, 602 F.3d 97, 99 (2d Cir.), cert. denied, 130 S. Ct. 3372 (2010); United States v. Doody, 600 F.3d 752, 755 (7th Cir.), cert. denied, 130 S. Ct. 3529

9

(2010); United States v. Mahan, 586 F.3d 1185, 1188–89 (9th Cir. 2009), cert. denied, 131 S. Ct. 173 (2010); United States v. Luke-Sanchez, 483 F.3d 703, 706 (10th Cir. 2007); United States v. Frederick, 406 F.3d 754, 764 (6th Cir. 2005) (relying on its decision in United States v. Mackey, 265 F.3d 457, 460–63 (6th Cir. 2001)).  Another court, the Fifth Circuit, "assume[d], without [having to] decid[e], that bartering drugs for guns constitute[d] 'possession in furtherance' of a drug trafficking offense" and held that the defendant did not have to receive the firearms contemporaneously with delivery of the drugs to commit the offense. United States v. Sterling, 555 F.3d 452, 458 (5th Cir.), cert. denied, 129 S. Ct. 2422 (2009).  The Fifth Circuit reasoned that the firearms, regardless of the timing of their delivery, "functioned as the currency used to purchase illegal drugs" to further the drug transaction.  Id. (relying on Luke-Sanchez, 483 F.3d at 706).

Miranda's conduct established that, but for the firearms, his transfer of heroin to Zayas and Hernandez would not have occurred.  Miranda requested firearms, exercised dominion, albeit briefly, over the firearms, and transferred an illegal drug for the firearms.  The record supports Miranda's conviction under section 924(c)(1)(A).

## IV. CONCLUSION

10

We **AFFIRM** Miranda's conviction for possessing a firearm in furtherance of a drug trafficking offense.