[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11601
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cr-60095-JAG-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee

versus

GEORGE JOSEPH ENGLAND,
a.k.a. Stephen Arthur Seagoe,

Defendant - Appellant


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 15, 2012)

Before TJOFLAT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

George Joseph England appeals his convictions for inducement and transportation, both internationally and interstate, of a female minor for illegal sexual activity. England was charged and convicted on five counts in violation of 18 U.S.C. §§ 2421, 2422 (1971), and 18 U.S.C. § 2423 (1970) following a jury trial. On appeal, England argues that: (1) the evidence was insufficient to convict him under 18 U.S.C. § 2422 (1971) and 18 U.S.C. § 2423 (1970); (2) the district court erred by not giving proper jury instructions; (3) two charges, 18 U.S.C. § 2422 (1971) and 18 U.S.C. § 2423 (1970), were multiplicitous; and (4) the district court erred by not granting a mistrial to allow the parties to determine the reliability of the victim's "recovered memories." After review, we affirm.

I.

In the early 1970s, England visited a young girl, J.S., and her family at their home in Vietnam. He began buying dolls, dresses, and candy for J.S and encouraged her to spend the night at his apartment. England sexually molested J.S. whenever she would spend the night. She was three or four years old at the time. Eventually, England took J.S. from her family, moved to Saigon and then to Thailand where the molestation continued. After spending a year in Thailand, England and J.S. moved to India and lived in a hotel. During their time in India, J.S. witnessed England sexually molest a young girl that she befriended while they

2

were camping at the beach. When J.S. was five years old, they moved to California where they lived in a garage apartment. J.S. testified that over the next thirteen years, England continued to sexually molest her, forced her to engage in bestiality, and impregnated her on multiple occasions. In October 1977, England was convicted of sexually molesting two other young girls in California. Shortly thereafter, J.S. and England fled to Florida. When J.S. was twelve or thirteen years old, they moved into a "flea-ridden" trailer where she was forced to cook, clean, and financially support England. Around this time, J.S. also gave birth. DNA testing showed 99.99% probability that England was the father of the baby. After this, England forced J.S. to undergo an abortion each time he impregnated her, which happened at least five times. J.S. testified that the space shuttle, Challenger, exploded on the same day, January 28, 1986, of her last abortion; she was eighteen years old. Following her last abortion, J.S. threatened to commit suicide if England ever touched her again. The abuse stopped after J.S.'s threat, and she moved out of England's home a few years later.

## II.

"We review the sufficiency of the evidence supporting a criminal conviction *de novo*." *United States v. Frank,* 599 F.3d 1221, 1233 (11th Cir. 2010). We ask whether, "after viewing the evidence in light most favorable to the prosecution,

3

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Miranda*, 666 F.3d 1280, 1282 (11th Cir. 2012) (per curiam) (quotation marks omitted), *cert. denied*, 132 S. Ct. 2412 (2012).  As such, we will not disturb a guilty verdict "unless no trier of fact could have found guilt beyond a reasonable doubt." *United States v. Yost*, 479 F.3d 815, 818–19 (11th Cir. 2007) (per curiam) (quotation marks omitted).  Whether the evidence is direct or circumstantial, we accept all reasonable inferences that tend to support the government's case. *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004).

First, England asserts that there was insufficient evidence to find that J.S. was transported via common carrier, an essential element for conviction under 18 U.S.C. § 2422 (1971).[1]  England argues that the government presented no evidence that they traveled on a commercial airplane and that a private plane could have been used to transport them.  The government responds that circumstantial

_____

[1] The version of 18 U.S.C. § 2422 pursuant to which England was charged reads:
> Whoever knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another in interstate or foreign commerce . . . and to be carried or transported as a passenger upon the line or route of *any common carrier or carriers* in interstate or foreign commerce . . . shall not be fined more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2422 (1971) (emphasis added).

4

evidence adequately demonstrates that England transported J.S. via a common carrier. England's living arrangements over the years—a one-bedroom apartment with little furniture, cheap motel rooms, an apartment in a garage, a flea-ridden trailer, and an efficiency—indicate that he did not have enough money to charter a private flight. England responds that the inference is too speculative and his lack of financial resources make it more likely that he flew on a private plane gratis rather than pay for a commercial flight.

Based on the evidence, the jury could properly infer that it was unlikely that England either paid for or was given a private plane ride. There was no evidence that England had well-connected friends in India with the resources to offer him a free intercontinental flight. The jury's conclusion is a reasonable interpretation of the evidence in light of England's financial situation and the limited options available for traveling from India to the United States during the 1970s. Thus, we conclude that there was sufficient evidence for a jury to find that J.S. was brought to the United States via a common carrier.

Additionally, England argues that there is insufficient evidence that he violated the pre-amendment version of 18 U.S.C. § 2423. Prior to February 6, 1978, § 2423 made it illegal to "knowingly persuade, induce, entice, or coerce a woman or girl to go from one place to another by common carrier, in interstate

5

commerce . . . with the intent that she be induced or coerced to engage in . . . debauchery or other immoral practice." 18 U.S.C. § 2423 (1970). On February 6, 1978, the statute was amended and required the defendant to know that the prohibited sexual conduct would be "commercially exploited." *See* Pub. L. No. 95-225 § 3, 92 Stat. 7 (1978). England was charged with the pre-amendment version of the statute. England contends that because a Florida school record shows J.S.'s enrollment date as February 14, 1978, the inducement and interstate transport could have occurred after February 6, and therefore, he could not be convicted under 18 U.S.C. § 2423 (1970).

Upon review, we find sufficient evidence for a reasonable juror to conclude that the inducement and travel occurred before February 6, 1978. J.S. testified that they left California before Christmas in 1977, and the trip to Florida took between four and five days. Even though records from a Florida elementary school show an enrollment date of February 14, 1978, J.S. testified that she attended one or two other schools in Florida prior to that date. Further, England skipped a sentencing hearing in California in December 1977. Consequently, a warrant was issued for his arrest. For the next twenty-eight years, England eluded his arrest by fleeing to Florida and assuming a new name. A reasonable juror could conclude that he would not have stayed in California for two months with a warrant out for his

6

arrest. Viewing all reasonable inferences in favor of the government, sufficient evidence supports England's conviction under the pre-amendment version of § 2423.

### III.

Next, we address England's argument that the district court failed to give proper instructions to convict him under § 2423 (1970). England maintains that the district court should have instructed the jury that it needed to find that the inducement for interstate travel occurred prior to February 6, 1978, in order to convict him under § 2423 (1970). The government argues that any error in the instructions was harmless, and when viewed in light of the entire trial, the instruction was not so misleading as to make the trial unfair.

"Generally, the district courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts." *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000) (quotation marks omitted). "A district court's failure to instruct a jury on all of the statutory elements of an offense is subject to harmless-error analysis." *United States v. Gomez*, 580 F.3d 1229, 1233 (11th Cir. 2009). For a harmless error analysis, we should "conduct a thorough examination of the record." *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 1838 (1999). If after our review we "cannot

7

conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—[we] should not find the error harmless." *Id.* Our review is limited to "ask[ing] whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Id.* at 19, 119 S. Ct. at 1839.

Assuming that the district court's failure to instruct on the date was error, it was harmless. As discussed previously, no evidence undermines J.S.'s testimony that they arrived in Florida prior to February 6, 1978. The school record from February 14, 1978 is insufficient to support a contrary finding, as it merely confirms that J.S. and England were in Florida on that date. It does not, on its own, support a finding that their interstate travel occurred after February 6, 1978. Thus, after thorough review of the record, we find any potential instructional error by the district court to be harmless.

## IV.

We now address England's assertion that the government must dismiss one of the charges because 18 U.S.C. §§ 2422 (1971) and 2423 (1970) are multiplicitous. England contends that the two statutes require essentially the same elements for conviction and therefore violate double jeopardy principles. The

8

government maintains that these statutes require different elements and therefore are not multiplicitous.

"An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Sirang*, 70 F.3d 588, 595 (11th Cir. 1995) (quotation marks omitted). The test for multiplicity is whether each provision requires proof of a fact which the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932). We have held that charges are not multiplicitous where they differ by a single element or fact. *United States v. Costa*, 947 F.2d 919, 926 (11th Cir. 1991).

England's convictions under 18 U.S.C. §§ 2422 (1971) and 2423 (1970) are not multiplicitous. Notably, both statutes contain several elements that are identical. 18 U.S.C. §§ 2422 (1971), 2423 (1970). Section 2422, however, requires that the victim is actually "carried or transported as a passenger upon the line or route of any common carrier." 18 U.S.C. § 2422 (1971). Section 2423 merely requires that the defendant enticed the victim to go from one place to another; it does not require *actual* transportation of the victim. 18 U.S.C. § 2422 (1971). Moreover, 18 U.S.C. § 2423 requires the victim to be a "woman or girl who has not attained her eighteenth birthday." There is no age requirement to convict a defendant under § 2422; rather, the victim can be "any woman or girl."

9

18 U.S.C. § 2422 (1970).  Because the statutes differ by these elements, they are not multiplicitous.  *See Costa*, 947 F.2d at 926.

V.

Lastly, England argues that the district court should not have denied his motions for a mistrial and a new trial because J.S. indicated that her testimony was based on "recovered memories," which he contends is unreliable.  England argues that he should have had an adequate opportunity to investigate how much of J.S.'s testimony was based on recovered memory. The government responds that England's testimony was not based on recovered memory.  Further, England had an opportunity to uncover more information regarding her therapy during J.S.'s cross-examination and chose not to do so.[2]

A district court's refusal to grant a mistrial is reviewed for abuse of discretion. *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007) (per curiam).  "A trial judge has discretion to grant a mistrial since he [or she] is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *Id.* (citation omitted).  To reverse a district court's denial of a mistrial, a

---

[2] We find no merit in England's argument that his Sixth Amendment confrontation rights were violated.  The district court placed no restrictions on his cross-examination of J.S., and he was aware of the corroborating documentation and evidence that the government would present to make its case.  Therefore, he had adequate opportunity to confront his accusers, as well as the witnesses against him.

10

defendant must demonstrate substantial prejudice. *United States v. Chastain*, 198 F.3d 1338, 1352 (11th Cir. 1999).

After review, we agree with the government that the evidence at trial does not demonstrate that J.S.'s testimony was recovered. J.S. testified that her therapist did not help her remember any of the major details in her testimony. Rather, her therapist helped "bring [only minor details] to light," such as the name of a town in California and the age of her last abortion. England's argument relies only on two answers that J.S. gave to defense counsel in response to questions that were immaterial to his conviction. Therefore, based on J.S.'s explicit rejection that her therapist helped her remember any significant details, and a lack of evidence that J.S.'s therapist engaged in recovered memory techniques, this case does not appear to even involve recovered memory.[3] Accordingly, the district court did not abuse its discretion in denying his motions to explore "recovered memory" because it was not present.

For the forgoing reasons, we affirm England's conviction.

**AFFIRMED.**

---

[3] Because no recovered memory is involved here, we decline England's invitation to rule on the broader unresolved issues of its admissibility in this circuit.

11