[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13156
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00007-MHT-WC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MONTY ERVIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(April 22, 2013)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Monty Ervin appeals his convictions and 120-month total sentence for

conspiracy to commit tax evasion and three counts of tax evasion.  On appeal,

Ervin argues that: (1) the district court erroneously denied his motion to suppress

evidence; (2) his convictions for tax evasion were unsupported by the evidence and the law; (3) the district court violated his Sixth Amendment rights by imposing sentence enhancements based on facts that were not found by a jury or admitted by Ervin; and (4) he was deprived of a fair and impartial jury when the district court denied his motion for a new trial.  For the reasons set forth below, we affirm Ervin's convictions and sentences.

## I.

In 2011, a federal grand jury returned a superseding indictment, charging Ervin and his wife, Patricia Ervin ("Patricia"), with conspiracy to defraud the United States for the purpose of obstructing the lawful government functions of the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 371 (Count Two)[1]; and three counts of tax evasion in violation of 26 U.S.C. § 7201 (Counts Three to Five).  Specifically, the indictment alleged that, between 1997 and 2006, the Ervins owned and managed Southern Realty & Property Management, LLC ("Southern Realty"), a property management company that received substantial amounts of rental income each month.  As to Count Two, the indictment alleged that, in furtherance of the conspiracy, the Ervins purchased, held, and sold property in the names of nominees (trustees), and they prepared false warranty deeds to facilitate

---

[1] Count One of the indictment related only to Patricia, who is not a party to the instant appeal.

2

the transfer of property held in the names of those nominees.  Further, the Ervins directed rental income from those properties to be paid to Southern Realty, and they obstructed the IRS in its attempt to assess and collect federal income taxes. Finally, as to the remaining counts, the indictment alleged that the Ervins did not file federal tax returns on their taxable income from 2004 to 2006.

Prior to trial, Ervin filed a motion to suppress evidence of photos depicting "food provisions, firearms, and safes" that were taken during a search of his property in March 2011.  He asserted that the government would suggest that the photos were incriminating.  At the suppression hearing, Ryan Karle, a Deputy United States Marshall, testified that he met with Ervin's son, Anthony Ervin ("Anthony"), at Anthony's home.  During the meeting, Anthony indicated that he and Ervin stored firearms in a shed on the property.  Anthony had access to the shed, and he allowed Agent Karle to take photos of its contents.

After the hearing, the magistrate judge issued a report and recommendation that the district court deny Ervin's motion.  Specifically, the magistrate found that no evidence supported a finding that Anthony had not voluntarily and knowingly consented to the search and photos of the shed.  Further, voluntary consent renders the search warrant requirement moot.  Because Anthony had mutual use of the property with joint access and control of the area, he had actual authority to consent to the search.  As to apparent authority, the same evidence established that

3

Deputy Karle also had a reasonable basis to believe that Anthony had such authority. Additionally, Ervin never alleged that government agents removed him from his property to silence any objection to the search. Finally, after receiving Anthony's consent, Deputy Karle was not required to also seek Ervin's consent.

Over Ervin's objections, the district court adopted the recommendation and denied Ervin's suppression motion. During Ervin's two-week trial, the government presented numerous witnesses, including friends and family members of the Ervins who had been designated as trustees for certain properties. Also, Susan Tyson, an IRS auditor, testified regarding her audits of Southern Realty and the Ervins, and she concluded that, for the tax years 2004 to 2006, the Ervins owed a total of $440,386 in taxes. Ultimately, the jury convicted Ervin on all counts.

Prior to sentencing, Ervin filed a motion for a new trial pursuant to Fed.R.Crim.P. 33(b)(1), alleging that Curtis Malone, a government witness, had known one of the jurors, and had a prior dispute with that same juror that resulted in a "heated verbal altercation." The court held an evidentiary hearing, at which Malone and the juror both testified.

After the hearing, the district court denied Ervin's motion, finding that the juror had testified honestly, during *voir dire,* that he could be fair and impartial despite his prior relationship with Malone. Notably, a juror-witness relationship does not strongly imply bias. Here, the juror was directly asked about his ability to

4

serve impartially and, without hesitation, he testified that he was able to deliberate without bias and that he reached a verdict solely based on the evidence.  The court credited the juror's testimony and found that he had served without bias.  Finally, although the juror had heard from acquaintances, prior to trial, that Ervin had renounced his United States citizenship, the juror testified honestly that he did not know the Ervins and that he was not influenced by what he had heard.

The presentence investigation report ("PSI") determined Ervin's base offense level based on a total tax loss of $937,843.  Additionally, the PSI applied (1) a two-level increase for the use of sophisticated means pursuant to U.S.S.G. § 2T1.1(b)(2); (2) a four-level increase for Ervin's leadership role under U.S.S.G. § 3B1.1(a); and (3) a two-level increase for obstruction of justice under U.S.S.G. § 3C1.1.  Ervin objected to each of these enhancements.

At sentencing, the government challenged the amount of the tax loss and, after hearing witness testimony on the issue, the court determined that the tax loss amount should be calculated based on gross receipts less expenses.  After the parties reached an agreement as to the Ervins' expenses, the court concluded that the tax loss amount was $1,436,508.  Further, the court overruled each of Ervin's objections to his sentence enhancements, and it discussed its factual findings regarding each enhancement.  Ultimately, the court imposed a 120-month total

5

sentence, consisting of 60 months for Count Two, to run consecutively to the concurrent 60-month sentences for Counts Three, Four, and Five.

## II.

In reviewing the denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its application of the law to those facts *de novo*. *United States v. Ponce-Aldona*, 579 F.3d 1218, 1221 (11th Cir. 2009). Further, we construe the facts in the light most favorable to the prevailing party. *Id*.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Although officers generally may not search a home without a warrant, they may conduct a search "with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109, 126 S.Ct. 1515, 1520, 164 L.Ed.2d 208 (2006). Officers may obtain consent "from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Whether the officers validly relied upon third-party consent depends on whether the officers, "at the time of entry, reasonably believed [that the third party] possessed authority over the premises." *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008).

6

Whether an individual possessed common authority is not a question of property law, but rather depends "on mutual use of the property by persons generally having joint access or control for most purposes." *Matlock*, 415 U.S. at 171 n.7, 94 S.Ct. at 993 n.7. The government bears the burden of establishing common authority. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990). Despite the third-party consent rule, where a resident of a house expressly refuses to consent to a warrantless search, the search is unreasonable as to the objecting resident. *Randolph*, 547 U.S. at 120, 126 S.Ct. at 1526. Nonetheless, although officers may not remove an objecting tenant for the purpose of avoiding a possible objection, officers are not required to ask a potential objector if he consents. *Id.* at 121-22, 126 S.Ct. at 1527-28.

The district court did not err in denying Ervin's motion to suppress evidence. Specifically, the court found that Anthony, Ervin's stepson, had actual and apparent authority to consent to the search and that government agents did not coerce Anthony into granting consent. Those factual findings were not clearly erroneous because they were supported by Deputy Karle's testimony at the suppression hearing. Specifically, Deputy Karle testified that Anthony lived in a house on the same property as the shed, he had access to and keys to open the shed, and he stored his own firearms in the same area with Ervin's firearms. Based on these facts, Anthony had common authority to consent to the search because he

7

had joint access or control over the area for most purposes. *See Matlock*, 415 U.S. at 171 n.7, 94 S.Ct. at 993 n.7. Regardless, under the circumstances, Deputy Karle reasonably relied on Anthony's apparent authority to consent. *See Mercer*, 541 F.3d at 1074. Further, no evidence suggested that Deputy Karle coerced Anthony to consent to the search. To the contrary, Deputy Karle testified that he repeatedly assured Anthony that he was not under investigation, and he was not obligated to speak with police. Additionally, Deputy Karle testified that he never threatened Anthony or made any show of force towards him. Contrary to Ervin's argument, Deputy Karle's testimony that he informed Anthony of the "harboring act" did not establish that Deputy Karle threatened or coerced Anthony.

On appeal, Ervin suggests that Deputy Karle should have obtained a warrant. However, the district court correctly found that Anthony's valid consent provided an exception to the Fourth Amendment's warrant requirement. *See Randolph*, 547 U.S. at 109, 126 S.Ct. at 1520. Ervin also argues that the search was unreasonable because both Deputy Karle and Anthony knew that Ervin would not have consented to the search if he had been present. However, no evidence suggested that Ervin's inability to personally consent justified suppressing the evidence. *See id.* at 121-22, 126 S.Ct. at 1527. Moreover, Ervin does not allege that Deputy Karle removed him from the property for the purpose of preventing his objections and, after obtaining Anthony's valid consent, Deputy Karle was not required to

8

also seek Ervin's consent. *See id.* Finally, Ervin asserts that the photos of the shed's contents were more prejudicial than probative. However, this argument is not relevant to the district court's pre-trial ruling on his motion to suppress evidence, and he does not identify any specific evidentiary ruling during his two-week trial that he seeks to challenge. For these reasons, the district court did not err in denying Ervin's motion to suppress evidence.

## III.

We review *de novo* the sufficiency of the evidence to support a criminal conviction. *United States v. Frazier*, 605 F.3d 1271, 1278 (11th Cir. 2010). In making this determination, we "view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *Id.* (citation omitted). When a jury finds a defendant guilty, its verdict must stand if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Miranda*, 666 F.3d 1280, 1282 (11th Cir.), *cert. denied*, 132 S.Ct. 2412 (2012).

To sustain a conviction for tax evasion under § 7201, the government must prove three elements: (1) willfulness; (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *United States v. Kaiser*, 893 F.2d 1300, 1305 (11th Cir. 1990).

The economic-substance, or sham-transaction doctrine, provides that a transaction ceases to merit tax respect when it has no economic effect other than the creation of tax benefits. *United Parcel Serv. of Am. v. Comm'r of Internal Revenue*, 254 F.3d 1014, 1018 (11th Cir. 2001). Even if the transaction has economic effects, it must be disregarded if it has no business purpose and its motivation is tax avoidance. *Id.* The kind of economic effects required to entitle a transaction to respect in taxation include the creation of genuine obligations enforceable by an unrelated party. *Id.* Under the sham-transaction doctrine, courts should look at the substance of a transaction rather than just its form. *Kirchman v. Comm'r of Internal Revenue*, 862 F.2d 1486, 1491 (11th Cir. 1989). Although a taxpayer may structure a transaction to minimize his tax liability, the transaction must nevertheless have economic substance. *See id.*

As an initial matter, on appeal, Ervin challenges only his convictions for tax evasion under § 7201. Thus, he has abandoned any challenge to the conspiracy count. *See United States v. Woods*, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012) (deeming an issue abandoned where the appellant failed to develop any argument on the issue in his opening brief). Further, it is unclear whether Ervin has adequately developed an argument regarding the sufficiency of the evidence, as he does not cite to the record or discuss any of the specific evidence that was presented against him during his two-week trial. Nonetheless, he suggests that

10

evidence was insufficient to establish the existence of a tax deficiency because he should not be held personally responsible for taxes on income from the sale of trust property.  For the reasons discussed below, this argument fails.

Viewing the evidence in the light most favorable to the government, evidence was sufficient to establish each of the required elements of § 7201.  *See Miranda*, 666 F.3d at 1282; *Kaiser*, 893 F.2d at 1305.  As to whether the evidence established a tax deficiency, Ervin's argument on appeal is meritless because, under the sham-transaction doctrine, the jury was permitted to disregard the trusts as separate legal entities based on evidence that the trusts lacked economic substance.  *See United Parcel Serv. of Am.*, 254 F.3d at 1018.  At trial, evidence showed that Ervin set up trusts with trustees who did not understand their duties, who did not perform any trustee duties, and who did not know the names of the trust properties or beneficiaries.  Specifically, (1) Jack Rudy never performed any trustee duties, he did not understand the nature of a trust, and he did not know the names of the trust properties; (2) Jeff Hargett did not know the name of the trust, when the trust was created, or the names of the beneficiaries; (3) Malone never performed any duties as a trustee other than signing the trust documents and paying state property taxes once; and (4) Milissa Scott Hargett did not know what it meant to serve as a trustee or the names of the trusts or beneficiaries.  Additionally, Mary Catherine Spann, another trustee, never agreed to be a trustee.

11

However, Tyson, the IRS investigator, testified that the names of these individuals, designated as trustees for various trust properties, appeared on the warranty deeds for the sales of those properties. Further, she testified that the proceeds from the sales were deposited into Southern Realty's bank account and, the Ervins, who owned and managed Southern Realty, used those proceeds for their personal benefit. This evidence supported a determination that Ervin established trusts that lacked economic substance, and thus, those trusts should be disregarded for income tax purposes. *See id*. On appeal, Ervin alleges that he followed the terms of the relevant trust documents and that the government ignored his right to structure transactions for the purpose of minimizing his tax liabilities. Regardless, Ervin's income from the sales of the trust properties could still be considered as taxable personal income because he has not established that the trusts had economic substance. *See Kirchman*, 862 F.2d at 1491. Specifically, Ervin has not identified any evidence suggesting that the trusts involved any genuine obligations enforceable by an unrelated party. *See United Parcel Serv. of Am.*, 254 F.3d at 1018.

Finally, the evidence presented was sufficient to establish that Ervin's conduct was willful and that he took affirmative acts to evade income taxes. *See Kaiser*, 893 F.2d at 1305; 26 U.S.C. § 7201. Specifically, the evidence, discussed above, showed that Ervin set up sham trusts to gain untaxed personal income.

Further, evidence also showed that Ervin attempted to satisfy his tax liabilities with fictitious monetary instruments for one million dollars and one hundred billion dollars. He also submitted a notice of foreign status to the IRS and alleged that he was not a United States citizen, but a "sovereign Christian prince." However, no evidence suggested that Ervin was a foreign citizen who was not subject to federal income taxes. Thus, a rational trier of fact could have concluded that Ervin knew of his tax deficiency and acted willfully to evade paying taxes. *See Miranda*, 666 F.3d at 1282; *Kaiser*, 893 F.2d at 1305. For these reasons, sufficient evidence supported Ervin's tax evasion convictions.

## IV.

When a defendant raises a sentencing challenge for the first time on appeal, we review only for plain error. *United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000). To prevail under a plain-error standard, the appellant must show (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

Pursuant to § 7201, the maximum sentence for tax evasion is five years' imprisonment. 26 U.S.C. § 7201. Further, the maximum sentence for conspiracy to commit tax evasion is also five years' imprisonment. 18 U.S.C. § 371. If

13

multiple terms of imprisonment are imposed on a defendant at the same time, the terms may run concurrently or consecutively.  18 U.S.C. § 3584(a).

In *Apprendi v New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, with the exception of the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.  *Id.* at 490, 120 S.Ct. at 2362-2363.  In *Southern Union Co. v. United States*, 567 U.S. ___, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012), the Supreme Court held that the rule in *Apprendi* extends to the imposition of criminal fines.  *Id.* at ___, 132 S.Ct. at 2357.  Because *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) rendered the Sentencing Guidelines advisory, enhancements of a defendant's advisory guideline range based on the sentencing court's factual findings do not implicate the Sixth Amendment.  *See United States v. Rodriguez*, 398 F.3d 1291, 1301-02 (11th Cir. 2005) (noting that all nine justices in *Booker* "agreed that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional"); *United States v. Chau*, 426 F.3d 1318, 1323-24 (11th Cir. 2005) (stating that *Booker* rejected the idea that, in an advisory system, the Sixth Amendment "prohibits the sentencing court from making factual determinations that go beyond a defendant's admissions").

14

Thus, under advisory guidelines, "a district court may make additional factual findings under a preponderance of the evidence standard, that go beyond the facts found by the jury, so long as the court recognizes the Guidelines are advisory." *United States v. Dean*, 487 F.3d 840, 854 (11th Cir. 2007). Accordingly, in *United States v. Snipes*, 611 F.3d 855 (11th Cir. 2010), we specifically rejected a defendant's argument that the district court violated *Apprendi* when it imposed a sentencing enhancement based on the court's factual determinations regarding the extent of the tax loss. 611 F.3d at 871 n.8.

Because Ervin raises his *Apprendi*-based arguments for the first time on appeal, we review his challenges only for plain error. *See Aguillard*, 217 F.3d at 1320. In sentencing Ervin, the district court did not err, plainly or otherwise, when it applied guideline enhancements based on factual findings that were not submitted to a jury or admitted by Ervin. The rule in *Apprendi*, which was extended to the imposition of criminal fines in *Southern Union*, only applies to findings of fact that increase a defendant's sentence beyond the applicable statutory maximum. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362-2363. Here, Ervin's reliance on *Apprendi* and *Southern Union* is misplaced because his 120-month (10-year) sentence did not exceed the applicable statutory maximum for his offenses. Specifically, Ervin faced a five-year maximum sentence as to each of the four counts listed in the indictment, and the district court was entitled to impose a

15

consecutive sentence as to the conspiracy count, which resulted in a total ten-year sentence. *See* 26 U.S.C. § 7201; 18 U.S.C. § 371; 18 U.S.C. § 3584(a). Further, in sentencing Ervin, the court explicitly acknowledged that the Sentencing Guidelines were advisory. Therefore, Ervin's various sentence enhancements did not present any factual determinations that required a jury finding. *See Rodriguez*, 398 F.3d at 1301-02; *Dean*, 487 F.3d at 854.

## V.

We review a denial of a motion for new trial for abuse of discretion. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (*en banc*). Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). A motion for new trial based on juror misconduct is a form of a motion for new trial based on newly discovered evidence. *United States v. Calderon*, 127 F.3d 1314, 1351 (11th Cir. 1997). "Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution. Indeed, the defendant bears the burden of justifying a new trial." *Campa*, 459 F.3d at 1151. Further, we give substantial deference to the district court in reaching credibility determinations with respect to witness testimony. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010).

"To obtain a new trial . . . a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip. Inc v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 850, 78 L.Ed.2d 663 (1984). As to the second inquiry, there must be a showing of bias that would disqualify the juror. *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001). Actual bias may be shown either by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed. *Id*. A juror's bias may be implied if the juror has a special relationship with a party, such as a familial or master-servant relationship. *United States v. Rhodes*, 177 F.3d 963, 965 (11th Cir. 1999). The jury does not, however, have a duty to respond to questions not posed during *voir dire*. *United States v. Kerr*, 778 F.2d 690, 693-94 (11th Cir. 1985).

In light of the "highly disfavored" nature of new-trial motions based on newly discovered evidence, *see Campa*, 459 F.3d at 1151, the district court did not abuse its discretion in denying Ervin's motion for a new trial. We defer to the district court's credibility determination that, during *voir dire*, the juror testified honestly that he could be fair and impartial despite his prior relationship with Malone. *See Villarreal*, 613 F.3d at 1349. During *voir dire*, the juror admitted that he knew Malone, but he was not asked any questions regarding the nature of their

17

relationship.  As such, the juror was not required to provide such information at the time.  *See Kerr*, 778 F.2d at 693-94.  Moreover, Ervin has not shown that the juror was actually biased against him.  *See Carpa*, 271 F.3d at 967.  Bias should not be presumed because the juror did not have a prior relationship with Ervin.  *See Rhodes*, 177 F.3d at 965.  Further, the juror testified that, despite his dispute with Malone, he was able to be fair and impartial during trial, and the district court credited his testimony.  *See Villarreal*, 613 F.3d at 1349.  Additionally, Malone testified that the incident had occurred approximately 20 years earlier and that he no longer had any ill will against the juror.  Notably, if the juror had any negative feelings towards Malone, a *government* witness, it is unclear how those feelings would have resulted in bias against Ervin's defense.  Thus, it appears that the juror's prior dispute with Malone, which occurred 20 years ago and was unrelated to Ervin, did not affect the juror's ability to be fair and impartial.

Further, although the juror testified that he had heard from acquaintances that Ervin disavowed his United States citizenship, the juror also stated that he had no preconceived ideas about Ervin, and he was not biased in any way.  On appeal, Ervin argues that he was entitled to a new trial based on the prosecutor's failure to disclose the juror and Malone's prior relationship.  However, because the juror's prior relationship with Malone did not result in any bias towards Ervin, the prosecutor's actions did not deprive Ervin of his right to a fair and impartial jury.

For the foregoing reasons, we affirm Ervin's convictions and sentences.

**AFFIRMED.**