**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10286

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

HOWATDRICK JONES,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:22-cr-00012-CDL-CHW-1

_____

Before JORDAN, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

The district court convicted Howatdrick Jones of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), possession of a firearm in furtherance of a

drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a convicted felon, in violation of § 922(g)(1).  The district court sentenced Jones to a total term of 175 months, followed by five years of supervised release.  Jones now appeals his convictions, arguing that the evidence presented at his trial is insufficient to support the district court's findings that he possessed crack cocaine with the intent to distribute it, and that he possessed a firearm in furtherance of drug trafficking.  After carefully considering the parties' arguments, we affirm Jones's convictions.

## I.    FACTUAL & PROCEDURAL BACKGROUND

A grand jury returned a three-count indictment charging Jones with possession with the intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (Count 1), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3). Jones pled not guilty to all three counts.

Jones proceeded to a bench trial.  The evidence introduced at Jones's bench trial established the following.  In October 2019, Robert Davis, a K9 Officer for the Harris County Sheriff's Office, was parked on Highway 85 in Waverly Hall, Georgia.  Officer Davis was operating a license plate reader that alerted when a Dodge Caravan drove past him.  After confirming that the registered owner of the Caravan had an active warrant, Officer Davis initiated a traffic stop.  Jones was the sole occupant of the Caravan.  When

Officer Davis pulled Jones over, he noticed the odor of marijuana and asked Jones to step out of the vehicle. Jones denied having recently smoked marijuana in the car, denied that anyone else had smoked in the car, and denied having anything illegal in the car. Davis then called Waverly Hall Police Chief Michael Spencer to the scene.

Once Chief Spencer arrived, he indicated that he also smelled marijuana in the van. Officer Davis then searched the car. In the center console, Officer Davis found a brown louis Vuitton bag that contained a watch, a razor blade, a scale, and two baggies containing a white substance that later tested positive for crack cocaine. Jones was then placed under arrest. The officers patted Jones down before placing him in the back of the patrol car. No gun or other illegal contraband was found at the scene of the traffic stop.

Officer Davis then transported Jones to Harris County Jail and released him into the custody of jail staff. As part of the intake process, Harris County Jail Officer Stephen Dutton conducted a search of Jones and found a loaded black handgun inside Jones's pants. Officer Davis was also present for the search and recalled that Officer Dutton found the gun inside of Jones's right pants leg. Officer Davis explained that he likely overlooked the gun during his search of Jones because he did not pay close enough attention and he had limited his search to Jones's waistband and pockets. He stated that the gun was stuffed in Jones pants and had slid down his

pants leg as Jones walked and moved around. Officer Davis denied Jones's suggestion that he had planted the gun on Jones at the jail.

Officer Dutton recalled the search at the jail differently. He explained that he found the gun in Jones's waistband area almost immediately as he began his search. Officer Dutton conducted the search by inserting his thumb into the waist area and sliding it around about two to three inches below the waistband and made contact with the gun just below the waist. After discovering the gun, Officer Dutton pushed it down Jones's right pants leg in order to limit Jones's ability to reach it. He then removed the loaded handgun and resumed the booking process. Officer Dutton recalled that when he found the gun on Jones, Jones "twitched a little bit," and he "could tell he was nervous at that point," but Jones did not argue or protest.

The government later called Drug Enforcement Administration (DEA) Senior Forensic Chemist Dr. Michelle Andreasik to testify. Dr. Andreasik explained for the district court that she received intact the drugs found in Jones's car and the gross weight of the package was 55.8 grams and the net weight of the substance inside the package was 20.46 grams. Andreasik identified the make-up of the substance in the package as cocaine base and lidocaine.

The government then called DEA Agent James Barkesdale, an expert in drug distribution, who testified that it is very typical for drug traffickers to carry guns. He explained that guns offer protection for their product: "If someone attempts to rob them on a rival turf or if other drug dealers try to take their product they will

have a way to defend themselves." It was Agent Barkesdale's opinion that the 20.46 grams of crack cocaine, divided into two bags, plus the scale, a loaded gun, and a razor blade were all consistent with drug distribution and inconsistent with personal use. Though, Agent Barkesdale did acknowledge that other indications of drug distribution, such as small baggies or large amounts of money, were absent and that no analysis of Jones's cellphone was conducted to find communications indicative of drug dealing. Agent Barkesdale estimated the street value of the drugs found on Jones to be around $2,300, which was inconsistent with a user amount.

After Barkesdale testified, the government rested. Jones called no witnesses and exercised his right not to testify. The district court also admitted for purposes of Federal Rule of Evidence 404(b) Jones's prior conviction for sale of cocaine. The court denied Jones's Rule 29 motion for judgment of acquittal, later renewed, which was based on a claim that the United States failed to identify Jones in court as the person who was stopped and arrested.

The district court found Jones guilty as to all three counts and sentenced him to a total term of imprisonment of 175 months. This appeal followed.

## II.    STANDARD OF REVIEW

We "review[] *de novo* whether there is sufficient evidence to support a guilty verdict in a criminal trial." *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014). "In so doing, [we] view[] the

evidence in the light most favorable to the Government and re-solve[] all reasonable inferences and credibility evaluations in favor of the verdict." *Id.* The evidence presented at trial is sufficient to support the conviction "'if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009)). "If a reasonable trier of fact could so find, '[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt.'" *Id.* (quoting *United States v. Robertson*, 493 F.3d 1322, 1329 (11th Cir. 2007)).

## III.    ANALYSIS

Jones challenges the sufficiency of the evidence supporting his convictions for possession with intent to distribute cocaine base and possession of a firearm in furtherance of a drug trafficking crime. In a sufficiency of the evidence analysis, "'[a]ll reasonable inferences must be drawn in favor of supporting the jury's verdict.'" *Id.* (quoting *United States v. Sawyer*, 799 F.2d 1494, 1501 (11th Cir. 1986)). And "'[t]he test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence.'" *Id.* (quoting *United States v. Mieres-Borges*, 919 F.2d 652, 656-57 (11th Cir. 1990)). But "'[w]here the [g]overnment relies on circumstantial evidence, reasonable infer-ences, and not mere speculation, must support the jury's verdict.'" *Id.* (quoting *United States v. Klopf*, 423 F.3d 1228, 1236 (11th Cir. 2005)).

### A.

We turn to Jones's first argument.  Jones argues that the evidence produced at trial was insufficient to convict him of possession of cocaine base with intent to distribute because the evidence was solely circumstantial and that the evidence presented is equally consistent with a reasonable hypothesis of innocence, and thus his conviction must be reversed.   To convict a defendant "under [21 U.S.C.] § 841(a) for possession with intent to distribute" a controlled substance, "the government had to 'prove three elements: (1) knowledge; (2) possession; and (3) intent to distribute.'" *United States v. Cremades*, 160 F.4th 1296, 1302 (11th Cir. 2025) (quoting *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989)).  "Circumstantial evidence can prove all of those elements," and "[p]ossession may be established through actual or constructive possession." *Id.*  "Constructive possession exists when a defendant has 'dominion or control over the premises' in which the object is kept." *Id.* (quoting *United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998)).  "And '[i]ntent to distribute may be inferred from the amount of the drug involved.'" *Id.* (quoting *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005)).  Intent to distribute may be further inferred from "the presence of items typically utilized 'to separate large [drug] quantities into smaller quantities for retail purposes[.]'" *United States v. Butler*, 117 F.4th 1309, 1321 (11th Cir. 2024) (quoting *Poole*, 878 F.2d at 1392).

Jones argues that his mere presence in the van, even as the driver, is insufficient to establish that he possessed the drugs found

in the brown Louis Vuitton bag.  Next, he contends that there was no evidence that he had any intent to distribute the drugs because there was no evidence related to any type of drug transaction and the scale, razor blade, and quantity of crack discovered were equally consistent with personal use of the crack.

We conclude that the evidence presented by the government at Jones's bench trial is sufficient to support his conviction for possession of crack cocaine with the intent to distribute it.  The government established both knowledge and constructive possession of the crack by showing that Jones drove the van in which the crack was found.  Jones was the sole occupant of the van, Jones stated that the van was his, and law enforcement found the crack in a brown bag in the center console directly adjacent to where Jones was sitting and driving.  Further, the arresting officer also found a scale and a razor blade in the brown bag, consistent with Jones's intent to distribute.  And according to the DEA agent who testified, the quantity of crack cocaine Jones possessed was seven times the amount typical for a mere user of the drug.

Because the government produced sufficient evidence to support each element of Jones's challenged offense, we affirm his conviction for possession of crack cocaine with the intent to distribute.

**B.**

Jones next argues that the government failed to present sufficient evidence to support his conviction for possession of a firearm in furtherance of a drug trafficking crime.  Specifically, he first

argues that the government failed to produce sufficient evidence to prove that he knowingly possessed a firearm because neither officer at the scene of his arrest found the gun in his pants before placing him into the police car and there was no video evidence showing the officers finding the gun at the jail or physical evidence linking him to the gun. Implicit in this argument is that either the officers at the scene of the arrest or at the jail nefariously planted the gun on Jones or were otherwise lying about finding the gun at the jail. Jones next argues that even assuming the evidence established that he knowingly possessed the firearm, there was no evidence that he possessed it in furtherance of a drug trafficking crime. He maintains that his mere possession of a firearm and drugs is insufficient to support his conviction "without evidence that the firearm played an active role in the drug trafficking activity."

"'Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than [us] to assess the credibility of witnesses.'" *United States v. Grushko*, 50 F.4th 1, 11 (11th Cir. 2022) (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)). "Thus, we afford substantial deference to the fact finder's explicit and implicit credibility determinations." *Id.* "[W]e will defer to the district court's [credibility] determinations 'unless [its] understanding of the facts appears to be unbelievable.'" *United States v. Williams*, 731 F.3d 1222, 1230 (11th Cir. 2013) (quoting *Ramirez-Chilel*, 289 F.3d at 749).

"[A] defendant possesses a firearm in furtherance of" a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A) "when 'the firearm helped, furthered, promoted, or advanced the drug trafficking.'" *United States v. Miranda*, 666 F.3d 1280, 1283 (11th Cir. 2012) (quoting *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002)). However, the mere presence of a gun within the defendant's possession is insufficient. *Timmons*, 283 F.3d at 1253. Instead, "there must be 'a showing of some nexus between the firearm and the drug selling operation.'" *Id.* (quoting *United States v. Finley*, 245 F.3d 199, 202 (2d Cir. 2001)).

The government can establish "[t]he nexus between the gun and the drug operation" by "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)). These factors are not exclusive, and their purpose is to "distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id.* (quoting *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)). In sum, "[s]o long as the prosecution offers proof 'of some nexus between the firearm and the drug selling operation,' the defendant is subject to enhancement of his sentence under section 924(c)(1)(A)." *Miranda*, 666 F.3d at 1283 (quoting *Timmons*, 283 F.3d at 1252) (quotations modified).

To begin, the government produced sufficient evidence that Jones possessed a firearm.  Two officers testified that they found a gun in Jones's pants when they searched him at the jail.  The government explicitly asked Officer Davis if he planted the gun, and Officer Davis said no.  The district court found their testimony credible, and we do not disturb that finding.  *See Williams*, 731 F.3d at 1230.  Second, the government produced sufficient evidence that Jones possessed the firearm in furtherance of a drug trafficking crime.  Jones possessed the gun illegally, it was in close proximity to the crack cocaine, and it was loaded.  *See Timmons*, 283 F.3d at 1253.  Further, the DEA agent testified that drug traffickers often use guns to protect themselves and their product from theft.  We thus also affirm Jones's conviction for possession of a firearm in furtherance of a drug trafficking crime.

**AFFIRMED.**